IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JESSICA JAUCH                                                    PLAINTIFF

VERSUS                                              NO. 1:15CV75-SA-SAA

CHOCTAW COUNTY AND
CLOYD HALFORD, In His Individual Capacity                    DEFENDANTS

MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, Jessica Jauch, by and through counsel, and files her

Memorandum in Support of Motion for Partial Summary Judgment as to the liability of

the Defendant Cloyd Halford, in his individual capacity, and the Defendant Choctaw

County.  For cause, Ms. Jauch shows the Court as follows:

I.  STATEMENT OF FACTS

On February 17, 2011, a confidential informant working for narcotics officers

falsely claimed to have purchased narcotics (eight dosage units of an Alprazolam

mixture) from Ms. Jauch.  As a result of this false claim, almost one year later, on

January 24, 2012, a Choctaw County Grand Jury issued an indictment charging Ms.

Jauch for the sale of eight dosage units of a Schedule IV controlled substance, arising

from the alleged February 17, 2011, drug transaction.  That same day, the Choctaw

County Circuit Clerk issued a *Capias* Warrant, mandating the sheriff's department to

take Ms. Jauch into custody and safely hold her until she could be brought before the

court.

Ms. Jauch was blissfully unaware of the indictment when, on April 26, 2012, a Starkville Police Department officer stopped Ms. Jauch while she was driving, and issued her several traffic tickets. The Starkville officer also informed Ms. Jauch of an outstanding misdemeanor warrant in Choctaw County. The Starkville Police Department briefly detained Ms. Jauch until a Choctaw County sheriff's deputy picked her up and transported her to the Choctaw County Jail.

The following morning, Choctaw County sheriff's department deputies served Ms. Jauch with the misdemeanor warrant and with the felony *Capias* Warrant. The Return on the *Capias* Warrant was promptly filed by the Choctaw County Sheriff's Department with the Circuit Court. Within a few days of her detention, Ms. Jauch cleared the misdemeanor warrant and those charges were dropped.

While detained on the *Capias* warrant, Ms. Jauch protested her innocence, and requested that jail personnel take her before a judge so that she could post bond. The jail personnel told her that they had spoken with the Defendant Halford and she could not go before a judge until the next term of court, which would be in August 2012. For his part, the Defendant Halford informed Debra Odom, Ms. Jauch's friend, that he did not need to take Ms. Jauch before a judge to make bond until August because she had been arrested on a *Capias* Warrant.

2

On July 16, 2012, the Choctaw County Circuit Clerk notified Choctaw County Public Defender, Joey Hood, Esq., that Ms. Jauch's case was set for docket call on July 31, 2012, at 10:00 a.m. At this point, Ms. Jauch had yet to appear before the court or be appointed counsel.

On July 25, 2012, Ms. Jauch was transported to Oktibbeha County and arraigned on an unrelated charge of Possession of a Controlled Substance. Ms. Jauch was appointed counsel on the Oktibbeha County charge that day and her bail was set at $10,000 cash or bond. That same day, Ms. Jauch was returned to the Choctaw County Jail. On July 26, 2012, the Oktibbeha County Sheriff's Department placed a detainer on Ms. Jauch.

On July 31, 2012, Ms. Jauch was finally brought before the Circuit Court of Choctaw County for arraignment. Ms. Jauch was appointed counsel, Joey Hood, Esq., waived arraignment, had bail set at $15,000 cash or bond, and had her trial set for August 20, 2012. That day, Mr. Hood filed a motion for discovery. On August 6, 2012, Ms. Jauch posted bond and was released from custody in Choctaw County.

On August 20, 2012, Ms. Jauch was appointed new counsel, Hays Burchfield, Esq., who subsequently interviewed Ms. Jauch and reviewed the prosecution's discovery, including the surveillance video of the alleged drug sale. After reviewing the evidence, Mr. Burchfield felt the evidence only showed Ms. Jauch borrowing $40 from a

3

friend, the confidential informant, and so contacted the Assistant District Attorney

("ADA") assigned to her case.  On August 27, 2012, the ADA met with Ms. Jauch and

Mr. Burchfield and viewed the surveillance tape.  After viewing the surveillance tape,

the ADA moved to dismiss the case.  On January 29, 2013, the Circuit Court of Choctaw

County issued its Dismissal Order, thereby dismissing with prejudice the felony charge

against Ms. Jauch.

Ms. Jauch was detained at the Choctaw County Jail for ninety-six days without

an initial appearance, arraignment, notice of the charges against her, appointed counsel,

or bail.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary

judgment carries the burden of demonstrating that there is no evidence to support the

nonmovant's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  In ruling on a

motion for summary judgment, the court is not to make credibility determinations,

weigh evidence, or draw from the facts legitimate inferences for the movant.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Rather, the evidence of the nonmovant

4

is to be believed, and all justifiable inferences are to be drawn in her favor. Anderson, 477 U.S. at 255.

## III. ARGUMENT & AUTHORITIES

Ms. Jauch moves for partial summary judgment with respect to the defendants' liability on her claims under the Fourteenth Amendment, Sixth Amendment, and Eighth Amendment. While it is arguable that Ms. Jauch's Sixth and Eighth Amendment claims are subsumed within her Fourteenth Amendment Claim, see Hayes v. Faulkner County, 388 F.3d 669, 673 (8th Cir. 2004) (applying substantial due process), the Fifth Circuit has previously assessed each constitutional right separately. See Jones v. City of Jackson, 203 F.3d 875, 879-81 (5th Cir. 2000). Ms. Jauch will address each specific constitutional provision separately and identify the fundamental right violated by the Defendants' failure to provide a prompt pretrial hearing appearance before a judicial officer. In so doing, Ms. Jauch will forego repeating the basis for the liability of the Defendants after discussing the same in the section regarding the Fourteenth Amendment.

A. **Ms. Jauch's Ninety-Six Day Detention at the Choctaw County Jail Without Being Brought Before a Judicial Officer Violated Her Substantive and Procedural Fourteenth Amendment Right to Due Process.**

Ms. Jauch contends that her detention at the Choctaw County Jail for ninety-six days without being taken before a judge for an initial appearance or arraignment

5

violated her Fourteenth Amendment due process right to liberty. Given the stipulated facts and clearly established law, there is no genuine issue of material fact regarding the Defendant Choctaw County's and the Defendant Halford's liability to Ms. Jauch for her ninety-six day detention without affording her an initial appearance or arraignment.

At issue is Ms. Jauch's right to a prompt appearance in court after arrest by warrant, which is controlled by the due process clause of the Fourteenth Amendment. Hayes, 388 F.3d at 673. "Prohibition against improper use of the 'formal restraints imposed by the criminal process' lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause. Jones, 203 F.3d at 880-81 (quoting Board of Regents v. Roth, 408 U.S. 564, 575 (1972)). Ms. Jauch's due process right in freedom from the "improper use of the "formal restraints imposed by the criminal process has both a substantive and a procedural component. See Hayes, 388 F.3d at 673 (38-day detention without court appearance violates substantive due process); Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992) (114-day detention without arraignment, bail hearing, or trial violated detainees procedural due process right in freedom from prolonged pre-arraignment incarceration).

The morning following her detention at the Choctaw County Jail, Ms. Jauch was served with a copy of the indictment charging her with sale of a controlled substance. Upon being served with the indictment Ms. Jauch protested her innocence to jail

personnel and requested to be brought before a judge so that she could be set a bond and post bail. These protests of innocence and requests to appear before a judge continued throughout Ms. Jauch's detention. Choctaw County Jail personnel, after consulting with the Defendant Halford, responded to Ms. Jauch by telling her that she could not be taken before a judge until August. A direct inquiry to the Defendant Halford regarding when Ms. Jauch would be taken before a judge, was met with the Defendant Halford's assertion that he had no obligation to take Ms. Jauch before a judge because she was arrested on a *Capias* Warrant. Ultimately, Ms. Jauch remained detained by the defendants based on the *Capias* Warrant from April 26, 2012 until July 31, 2012, before she was finally taken by jail personnel to appear before a judge.

Substantially shorter and slightly longer delays, after an arrest by warrant, have been found to run afoul of the Fourteenth Amendment and violate a detainee's procedural and substantive due process rights. See, e.g. Hayes, 388 F.3d at 673 (38-day detention based on bench warrant without court appearance violates substantive due process); Armstrong v. Squadrito, 152 F.3d 564, 570 (7th Cir. 1998) (57-day detention on a (civil) body-attachment warrant without an initial appearance violated substantive due process); Oviatt v. Pearce, 954 F.2d at 1477 (114-day detention on a bench warrant without arraignment, bail hearing, or trial violated detainees Fourteenth Amendment liberty interest in freedom from prolonged pre-arraignment incarceration); Coleman v.

7

<u>Frantz</u>, 754 F.2d 719, 723-24 ( 7th Cir. 1985) (18-day detention after arrest by warrant but before initial appearance violated detainee's substantive due process rights); <u>McDonald v. Dunning</u>, 760 F. Supp. 1156, 1163-64 (E.D. Va. 1991) (21-day incarceration of detainee without being informed of the charges against him and appearing before a magistrate or judge constitute a violation of Fourteenth Amendment right not to be deprived of liberty without due process of law).

        1.      Substantive Due Process

In <u>Hayes</u>, the Eighth Circuit applied the Seventh Circuit's substantive due process analysis, from <u>Coleman</u> and <u>Armstrong</u>, to assess whether a 38-day delay between arrest on a warrant and an initial court appearance violated the detainee's liberty interest in a prompt court appearance after arrest by warrant.  <u>Hayes</u>, 388 F.3d 673-75 (citing <u>Armstrong</u>, 152 F.3d at 570; <u>Coleman</u>, 754 F.2d at 723-24).  In concluding that a 38-day detention violates substantive due process the court looked to the totality of the circumstances, considering "(1) whether the Due Process Clause prohibits an extended detention, without an initial appearance, following arrest by a valid warrant; (2) whether the defendants' conduct offended the standards of substantive due process; and (3) whether the totality of the circumstances shocks the conscience."  <u>Id.</u> At 674 (citing <u>Armstrong</u>, 152 F.3d at 570 (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 850 (1998))).

8

First, the Fifth Circuit, in rejecting the individual defendants' assertions of qualified immunity, on a detainee's Fourteenth Amendment due process claim arising from a nine-month detention without a court appearance, held that the liberty interest asserted by the detainee, in freedom from improper use of the restraints of the criminal process, was clearly established in 1994-95 and the resulting detention without a court appearance was not objectively reasonable in light of clearly established legal rules. Jones, 203 F.3d at 881. As already noted, unnecessarily prolonged pretrial detentions, after arrest on a facially valid warrant, of shorter durations than Ms. Jauch endured violate substantive due process guarantees. See Hayes, 388 F.3d at 673; Armstrong, 152 F.3d at 570; Coleman, 754 F.2d at 723-24; McDonald, 760 F. Supp. at 1163-64.

Second, having established the contours of the substantive due process right at issue, Ms. Jauch must establish that the defendants' acts and omissions amounted to deliberate indifference to her Fourteenth Amendment right to be free from improper restraints on her liberty. See Hayes, 388 F.3d at 674 (citing County of Sacramento, 523 U.S. at 853. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). In order to determine whether the Defendant Halford's and the Defendant Choctaw County's acts and omissions amounted to deliberate indifference their liability is assessed

9

separately.

In order to establish her Fourteenth Amendment substantive due process claim against the Defendant Halford, Ms. Jauch must establish that the Defendant Halford deprived her of a constitutional right; and that his actions were taken under color of law. Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000). Ms. Jauch must establish that the Defendant Halford was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation. Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999). In addition, as a supervisor, the Defendant Halford could be held liable if he, "[knew] about the [unconstitutional] conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [he] might see." Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992).

As already noted, the constitutional right violated by the Defendant Halford is Ms. Jauch's liberty interest in being free from the "improper use of the 'formal restraints imposed by the criminal process.'" Jones, 203 F.3d at 880-81 (quoting Roth, 408 U.S. at 575). The Defendant Halford personally deprived Ms. Jauch of this right by deliberately refusing to take her before a judge for ninety-six days despite Ms. Jauch's and others' protests that she be taken before a judge so that she could have bail set. The Defendant Halford possessed personal knowledge of Ms. Jauch's detention and failed to provide

10

her with a timely court appearance based on the inquiries he received from his jail personnel regarding her request to appear before a judge, and his own conversation with Ms. Odom.

The Defendant Halford is also liable in his role as a supervisor since he knew that his jail personnel were not taking Ms. Jauch before a judge and directed, approved, and condoned his jail personnel's unconstitutional conduct in depriving her of an initial appearance. The Defendant Halford, with direct knowledge of Ms. Jauch's pretrial detention, made a conscious decision to do nothing for ninety-six days while she languished in the Choctaw County Jail without the most basic due process right any pretrial detainee merits, a prompt appearance before a judge. Such acts and omissions epitomize deliberate indifference to Ms. Jauch's right to be free from extended pretrial detention without an initial appearance, bail hearing, or arraignment. Hayes, 388 F.3d at 674; Armstrong, 152 F.3d at 577; Coleman, 754 F.2d at 723.

The Defendant Choctaw County's liability in this matter must be assessed in accordance with Monell v. Department of Social Services, 436 U.S. 658 (1979). In Monell, the United States Supreme Court held that municipalities are subject to liability under 42 U.S.C. § 1983 when the violation of the plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, *or decision of a final municipal policy maker*. Monell, 436 U.S. at 694 (emphasis added). "[I]t is when

11

execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

"The concept of 'policy' in this standard is broader than laws or actions that have been given formal approval through an entity's policymaking channels." Hampton Co. Nat'l Sur., LLC v. Tunica County, 543 F.3d 221, 227 (5th Cir. 2008) (citing Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005). "When the person who committed the challenged act is in charge of policymaking in that part of the government, 'policy' can sometimes be found to have been established by the very act itself." Tunica County, 543 F.3d at 227 (citing Woodard, 419 F.3d at 352.) In Mississippi, sheriffs "are final policymakers with respect to all law enforcement decisions made within their counties." Id. (quoting Brooks v. George County, 84 F.3d 157, 165 (5th Cir. 1996)).

In assessing the liability of a municipality for a constitutional injury, the municipality, unlike its officers and agents, may not assert the defense of either qualified or absolute immunity. See Owen v. City of Independence, 445 U.S. 622, 638 (1980) (holding municipality may not assert the good faith of its officers and agents as a defense to liability under § 1983); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993) (stating unlike various government officials municipalities do not enjoy immunity from suit either absolute or qualified

12

under § 1983).

"Though Mississippi sheriffs implement policy, there must also be some evidence to withstand summary judgment that this County through this Sheriff's actions was the moving force behind and direct cause of the alleged injury." See Tunica County, 543 F.3d at 227 (citing Board of Comm'rs of Bryan County, 520 U.S. at 404-05 (1997); Williams v. Kaufman County, 352 F.3d 994, 1013-14 & n.66 (5th Cir. 2003) (stating deliberate indifference is not a factor when the county through its policymaker has directly caused the alleged injury)).

It is undisputed that Ms. Jauch's ninety-six detention was directly caused by the actions of the Defendant Halford. Despite personal knowledge of Ms. Jauch's arrest, protestations of innocence, request to appear before a judge, and prolonged detention, The Defendant Halford committed the Defendant Choctaw County to an inherently unconstitutional course of conduct by depriving a detainee of a fundamental right. The Defendant Halford's continuing decision over the course of more than three months to refuse to carry Ms. Jauch before a judge so that she could receive an initial appearance, bail hearing, or arraignment binds Choctaw County to his constitutionally deficient policy and constitutes deliberate indifference to Ms. Jauch's right to be free from unnecessarily prolonged pretrial detention.

The final consideration in assessing the defendants' liability for detaining Ms.

13

Jauch for ninety-six days without an initial appearance, bail hearing, or arraignment concerns whether or not such conduct shocks the conscience under the totality of the circumstances. Only official conduct that " shocks the conscience" is cognizable as a due process violation. County of Sacramento, 523 U.S. at 846 (citing Rochin v. California, 342 U.S. 165, 172-73 (1952)). The threshold question in such cases is " whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 847 n.8. The type of conduct which is most likely to rise to the " conscience-shocking level" is " conduct intended to injure in some way unjustifiable by any government interest." Id. at 849. Conduct which was not intentional, but rather was deliberately indifferent, may nevertheless rise to the conscience-shocking level in some circumstances. Id. at 849-50.

In considering the totality of the circumstances, at the time of Ms. Jauch's detention the Fifth Circuit unequivocally stated years before that the prolonged detention of a detainee without proper due process protections, which include a prompt appearance in court, violates clearly established rights under the Fourteenth Amendment and was not objectively reasonable. Jones, 203 F.3d at 880-81.

Mississippi law, echoing the federal constitutional standard, emphasizes the importance of a prompt initial appearance in court. Mississippi law requires that, "[e]very person making an arrest shall take the offender before the proper officer

14

without unnecessary delay for examination of his case . . . ." Miss. Code Ann. § 99-3-17.

Though the Defendant Halford did not personally arrest Ms. Jauch, he had knowledge

of her arrest and detention and the fact that the dictates of this statute requiring

examination of her case before the proper officer was not complied with. In addition,

the Mississippi Supreme Court, through its rule making authority requires that

arraignment "shall be held within thirty (30) days after the defendant is served with the

indictment."[1] Uniform Rules of Circuit & County Court 8.01. Lastly, the *Capias* Warrant

required the Sheriff of Choctaw County to "take Jessica Jauch if to be found in your

County, and her safely keep, so that you have her body before the Circuit Court of the

County of Choctaw . . . ."[2] The existence of rules requiring a prompt first appearance

before a judicial officer without unnecessary delay compelled the Eighth Circuit under

the totality of the circumstances to hold that a 38-delay between arrest and being taken

before a judge "shocks the conscience." Hayes, 388 F.3d at 675 (citing Coleman, 754

F.2d at 724).

---

[1]Rule 6.03 of the Uniform Rules of Circuit & County Court ("URCCC") requires that "[e]very person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." However, URCCC 6.05 exempts defendants under indictment from receiving an initial appearance.

[2]The *Capias* Warrant was issued on January 24, 2012 and called for Ms. Jauch to be taken before the Circuit Court on January 31, 2012, to answer the indictment found against her.

15

In invalidating an extended warrantless detention, the Supreme Court noted, "The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." Gerstein v. Pugh, 420 U.S. 103, 114 (1975). Addressing a three-day detention occasioned by a mistaken arrest pursuant to a valid warrant, the Supreme Court, in upholding the three-day detention, signaled that due process imposed limits on indefinite detention "in the face of repeated protests of innocence." Baker v. McCollan, 443 U.S. 137, 144 (1979).

> We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will, after the lapse of a certain amount of time, deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not, and could not, amount to such a deprivation.

Baker, 443 U.S. at 145.

Ms. Jauch was jailed for ninety-six days without ever being taken before a judicial officer. During her detention she was forced to relinquish temporary custody of her daughter to her mother and was deprived of the ability of post bail or receive the assistance of counsel to prove her innocence. Every harm a prompt initial appearance before a judicial officer was meant to prevent was needlessly visited upon Ms. Jauch. The acts and omissions of the Defendant Halford and the Defendant Choctaw County

16

lack any legal or moral force and shock the contemporary conscience. These Defendants, based on the stipulated and undisputed facts, are liable to Ms. Jauch for violating her right to substantive due process.

> 2.      Procedural Due Process

In order for Ms. Jauch to state a cognizable claim under § 1983 for the deprivation of her procedural due process rights, she must demonstrate that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to Ms. Jauch did not provide due process of law. Board of Regents v. Roth, 408 U.S. 564, 569-72 (1972).

With respect to the deprivation of an individual interest element, the detention of Ms. Jauch clearly implicates her Fourteenth Amendment right to liberty. Jones, 203 F.3d at 880-81. In addition, the due process contours of Ms. Jauch's substantial liberty interest in a prompt appearance before a judicial officer after an arrest based on a warrant may be shaped by reference state law. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state law created a liberty interest in a "shortened prison sentence" that resulted from good time credits). Cognizant of this substantial liberty interest, Mississippi set forth specific statutory and other requirements which must be met in order to guarantee the prompt appearance of all detainees before a a judicial officer.

17

See Miss. Code Ann. § 99-3-17 (all persons arrested shall be brought before a judicial officer without unnecessary delay); URCCC 8.01 (arraignment shall be held within thirty days after service of the indictment).

With respect to the second element, the procedures available to Ms. Jauch, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine what process is due, the court must balance the (1) "the private interests affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335.

The private interest involved is a detainee's substantial liberty interest in being promptly carried before a judicial officer. Jones, 203 F.3d at 880-81; Hayes, 388 F.3d at 674; Armstrong, 152 F.3d at 577; Coleman, 754 F.2d at 723; McDonald, 760 F. Supp. at 1163-64. The failure of the Defendant Halford and the Defendant Choctaw County to provide Ms. Jauch with a prompt appearance leads directly, as it did in this case, to the erroneous deprivation of numerous fundamental rights. No possible government interest supports the deprivation of prompt hearing before a judicial officer and none

18

exists in this case.

Balancing these factors leads to the inescapable conclusion that the Defendant Halford and Defendant Choctaw County entrusted with the protection and welfare of detainees committed to the jail are required as a matter of constitutional law to protect the fundamental rights of those detainees by, at a minimum, carrying detainees before judicial officers and having policies in place which require them to comply with federal law and the mandatory dictates of Mississippi law which require prompt appearances before judicial officers for detainees.

In finding the 114-day detention of a detainee, between arrest and an initial court appearance, violated procedural due process principles the Ninth Circuit held, "[i]n short, the liberty interest in freedom from prolonged pre-arraignment incarceration is great, the risk of erroneous deprivation of that interest was great, and reasonable procedures for decreasing erroneous incarcerations were readily available. Under Mathews, Multnomah County's minimalist approach to jail procedure failed to provide inmates with the protection that they were due, and therefore contravened the Fourteenth Amendment." Oviatt, 954 F.2d at 1477. In this case, where the Defendant Halford and the Defendant Choctaw County intentionally refused to provide Ms. Jauch with a prompt pretrial appearance before a judicial officer and not only lacked any procedures but implemented a policy of refusing to provide a prompt appearance, the

19

requirements of due process were violated and liability must be imposed on these

Defendants.

        B.     <u>Ms. Jauch's Ninety-Six Day Detention at the Choctaw County Jail Without Being Brought Before a Judicial Officer Violated Her Sixth Amendment Right to Be Informed of the Charges Against Her and Her Right to Counsel.</u>

Ms. Jauch contends that her detention at the Choctaw County jail for ninety-six

days without being taken before a judge violated her clearly established Sixth

Amendment rights to be informed of the charges against her and her right to counsel.

"A [criminal] defendant's right to be informed of the nature and cause of an

accusation brought against [her] does not exist until the Government is committed to a

prosecution." <u>Jones v. City of Jackson</u>, 203 F.3d at 880 (citing <u>Kladis v. Brezek</u>, 823 F.2d

1014, 1018 (7th Cir. 1987)).  What constitutes a commitment to prosecute is a question of

federal law unaffected by allocations of power among state officials under a State's law.

<u>See</u> <u>Rothgery v. Gillespie County, Tex.</u>, 554 U.S. 191, 207 (2008) (citing <u>Moran v.

Burbine</u>, 475 U.S. 412, 429 n.3 (1986)).  The Unites States Supreme Court has identified

the commitment to prosecute to arise from "'the initiation of adversary judicial criminal

proceedings whether by way of formal charge, preliminary hearing, *indictment*,

information, or arraignment.'" <u>Rothgery</u>, 554 U.S. at 198 (quoting <u>United States v.

Gouveia</u>, 467 U.S. 180, 188 (1984) (quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972)

(plurality opinion))).  According to well-established precedent, the filing of the

indictment against Ms. Jauch, on January 24, 2012, constituted a commitment to prosecute and her Sixth Amendment right to be informed of the nature and cause of the accusation brought against her attached at that moment. Jones, 203 F.3d at 880.

With respect to Ms. Jauch's right to counsel under the Sixth Amendment, that right attached when adversary proceedings, through the filing of an indictment, were initiated against Ms. Jauch. Id. (citing United States v. Gouveia, 467 U.S. 180, 187-88 (1984)).

It is undisputed that despite Ms. Jauch's clearly established constitutional rights to be informed of the nature and cause of the accusation against her, and the right to counsel, the Defendants deliberately refused and failed to take her before a judicial officer for ninety-six days. When Ms. Jauch protested her innocence to the charge and requested of jail personnel that she be taken before a judge so that she could have her bail set, she was told by jail personnel that she would not be permitted to see a judge until several months in the future, based on their discussion of the matter with the Defendant Halford. In addition, the Defendant Halford personally informed Ms. Jauch's mother, Ms. Gatlin, and her friend, Ms. Odom, that he was not required to take Ms. Jauch before a judge until the next term of court, in August, because she had been arrested on a *Capias* Warrant.

The Defendants deliberate refusal to fulfill their constitutional obligations to

21

provide Ms. Jauch with a prompt appearance before a judicial officer constituted

deliberate indifference to Ms. Jauch's federal rights for which no defense to liability

exists. Where the Defendant Halford and the Defendant Choctaw County intentionally

refused to provide Ms. Jauch with a prompt pretrial appearance before a judicial officer

and not only lacked any procedures but implemented a policy of refusing to provide a

prompt appearance, the requirements of the Sixth Amendment for notice to the accused

and the right to counsel were violated and liability must be imposed on these

Defendants.

      C.      <u>Ms. Jauch's Ninety-Six Day Detention at the Choctaw County Jail Without Being Brought Before a Judicial Officer Violated Her Eighth Amendment Right to Bail.</u>

Ms. Jauch contends that her detention at the Choctaw County jail for ninety-six

days without being taken before a judge violated her clearly established Eighth

Amendment right to bail.

"[W]hile there is no absolute federal constitutional right to bail pending appeal,

once a state makes provisions for such bail, the Eighth and Fourteenth Amendments

require that it not be denied arbitrarily or unreasonably." <u>Young v. Hubbard</u>, 673 F.2d

132, 134 (5th Cir. 1982) (quoting <u>Finetti v. Harris</u>, 609 F.2d 594, 599 (2d Cir. 1979)). Upon

her arrest Ms. Jauch was detained on a bailable offense. However, despite her repeated

requests to be brought before a judge so that her bond could be set, the Defendants

arbitrarily refused to take her before a judicial officer so that her bail could be set. It was not until Ms. Jauch languished in the Choctaw County Jail for ninety-six days that she appeared before a judge and had her bail set. Within one week of having her bail set, Ms. Jauch posted bond.

The Defendants deliberate refusal to fulfill their constitutional obligations to provide Ms. Jauch with a prompt appearance before a judicial officer constituted deliberate indifference to Ms. Jauch's federal rights for which no defense to liability exists. Where the Defendant Halford and the Defendant Choctaw County intentionally refused to provide Ms. Jauch with a prompt pretrial appearance before a judicial officer and not only lacked any procedures but implemented a policy of refusing to provide a prompt appearance, the requirements of the Sixth Amendment for notice to the accused and the right to counsel were violated and liability must be imposed on these Defendants.

IV.     CONCLUSION

For the reasons stated above, Ms. Jauch requests that this Court enter judgment against the Defendant Halford and the Defendant Choctaw County with respect to their liability to Ms. Jauch for violating her fundamental rights under the Fourteenth Amendment, Sixth Amendment, and Eighth Amendment.

23

Respectfully submitted, this the 20th day of June 2016.

/s/ Victor Israel Fleitas

_____

      VICTOR I. FLEITAS
      MS BAR NO. 10259

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
(662) 840-0270 / Telephone
(662) 840-1047 / Facsimile
fleitasv@bellsouth.net / Email

Attorney for Jessica Jauch

CERTIFICATE OF SERVICE

      I hereby certify that on June 20, 2016 I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the

following:

      Daniel J. Griffith, Esq.
      Jacks, Griffith & Luciano
      Post Office Box 1209
      Cleveland, Mississippi 38732
      dgriffith@jlpalaw.net

      This the 20th day of June, 2016.

/s/ Victor Israel Fleitas

_____

      VICTOR I. FLEITAS