IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JESSICA JAUCH                                                                          PLAINTIFF

VERSUS                                                                    NO. 1:15CV75-SA-SAA

CHOCTAW COUNTY AND
CLOYD HALFORD, In His Individual Capacity                            DEFENDANTS

MEMORANDUM IN OPPOSITION TO MOTION
[DOC. 18] FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Jessica Jauch, by and through counsel, and files her

Memorandum in Opposition to Motion [Doc. 18] for Summary Judgment filed by the

Defendant Cloyd Halford, in his individual capacity, and the Defendant Choctaw

County.  For cause, Ms. Jauch shows the Court as follows:

I.      STATEMENT OF FACTS

On February 17, 2011, a confidential informant working for narcotics officers

falsely claimed to have purchased narcotics (eight dosage units of an Alprazolam

mixture) from Ms. Jauch.  As a result of this false claim, almost one year later, on

January 24, 2012, a Choctaw County Grand Jury issued an indictment charging Ms.

Jauch with the sale of eight dosage units of a Schedule IV controlled substance, arising

from the alleged February 17, 2011 drug transaction.  That same day, the Choctaw

County Circuit Clerk issued a *Capias* Warrant, mandating the Choctaw County Sheriff

take Ms. Jauch into custody and safely hold her until she could be brought before the

court.

Ms. Jauch was blissfully unaware of the indictment when, on April 26, 2012, a Starkville Police Department officer stopped Ms. Jauch while she was driving, and issued her several traffic tickets. The Starkville officer informed Ms. Jauch of an outstanding misdemeanor warrant in Choctaw County. The Starkville Police Department briefly detained Ms. Jauch until a Choctaw County sheriff's deputy picked her up and transported her to the Choctaw County Jail.

The following morning, Choctaw County Sheriff's Department deputies served Ms. Jauch with the misdemeanor warrant and with the felony *Capias* Warrant. The Capias Warrant commanded the Defendant Halford "to take Jessica Jauch . . . and her safely keep, so that you have her body before the Circuit Court of the County of Choctaw . . . on the 31st day of January, 2012, then and there to answer . . . on an indictment found against her on the 24th day of January, 2012 . . . ." The Return on the *Capias* Warrant was promptly filed by the Choctaw County Sheriff's Department with the Circuit Court. Within a few days of her detention, Ms. Jauch, with the assistance of a friend, cleared the misdemeanor warrant and those charges were dropped.

While detained on the *Capias* Warrant, Ms. Jauch protested her innocence, and requested that jail personnel take her before a judge so that she could post bond. The jail personnel told her that they had spoken with the Defendant Halford and were told

that she could not go before a judge until the next term of court, which would be in August 2012. For his part, the Defendant Halford confirmed the information relayed to Ms. Jauch when he informed Debra Odom, Ms. Jauch's friend, that he did not need to take Ms. Jauch before a judge to make bond until August because she had been arrested on a *Capias* Warrant.

On July 16, 2012, the Choctaw County Circuit Clerk notified Choctaw County Public Defender, Joey Hood, Esq., that Ms. Jauch's case was set for docket call on July 31, 2012, at 10:00 a.m. At this point, Ms. Jauch had yet to appear before the court or had counsel appointed to represent her.

On July 25, 2012, Ms. Jauch was transported to Oktibbeha County and arraigned on an unrelated charge of Possession of a Controlled Substance. Ms. Jauch was appointed counsel on the Oktibbeha County charge that day and her bail was set at $10,000 cash or bond. That same day, Ms. Jauch was returned to the Choctaw County Jail. On July 26, 2012, the Oktibbeha County Sheriff's Department placed a detainer on Ms. Jauch.

On July 31, 2012, Ms. Jauch was finally brought before the Circuit Court of Choctaw County for arraignment. Ms. Jauch was appointed counsel, Joey Hood, Esq., waived arraignment, had bail set at $15,000 cash or bond, and had her trial set for August 20, 2012. That day, Mr. Hood filed a motion for discovery. On August 6, 2012,

Ms. Jauch posted bond and was released from custody in Choctaw County.

On August 20, 2012, Ms. Jauch was appointed new counsel, Hays Burchfield, Esq., who subsequently interviewed Ms. Jauch and reviewed the prosecution's discovery, including the surveillance video of the alleged drug sale. After reviewing the evidence, Mr. Burchfield felt the evidence only showed Ms. Jauch borrowing $40 from a friend, the confidential informant, and so contacted the Assistant District Attorney ("ADA") assigned to her case. On August 27, 2012, the ADA met with Ms. Jauch and Mr. Burchfield and viewed the surveillance tape. After viewing the surveillance tape, the ADA moved to dismiss the case. On January 29, 2013, the Circuit Court of Choctaw County issued its Dismissal Order, thereby dismissing with prejudice the felony charge against Ms. Jauch.

Ms. Jauch was detained at the Choctaw County Jail for ninety-six days without an initial appearance, arraignment, notice of the charges against her, appointed counsel, or bail.

II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary

judgment carries the burden of demonstrating that there is no evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in her favor. Anderson, 477 U.S. at 255.

III.     ARGUMENT & AUTHORITIES

        The Defendants agree that Ms. Jauch's constitutional rights were violated when she was held at the Choctaw County jail on a *Capias* Warrant for ninety-six days without a post-arrest hearing. Where the Defendants and Ms. Jauch differ is with respect to who is constitutionally responsible for assuring that a detainee receives a prompt initial appearance or arraignment before a neutral magistrate. Despite a Herculean effort to contort the law, in a desperate effort to deflect liability away from themselves, Mississippi law and constitutional requirements place the responsibility for assuring that detainees are taken promptly before a court for an initial appearance or arraignment squarely on the sheriff and the county in which the detainee is held.

A.    Under Clearly Established Law a County Sheriff in Mississippi is
      Responsible for Assuring that a Detainee Receive a Prompt Court
      Appearance Before a Neutral Magistrate.

In asserting an entitlement to summary judgment, the Defendants do not assert

that they ever attempted to arraign Ms. Jauch, as no attempt to arraign her was ever

made.  The Defendants do not assert that a circuit judge was unavailable or unwilling to

arraign Ms. Jauch, between April 25, 2012 and July 31, 2012, in Choctaw County or any

of the other counties in the judicial district.[1]  The Defendants do not assert that they

lacked the manpower or resources to communicate with the court, or the District

Attorney's Office, to make arrangements to arraign Ms. Jauch.  And although the

Defendants assert, without factual support, that no arraignment, bail, or attorney were

effectively available for Ms. Jauch until the term of court following her arrest, (Mem. in

Supp. of Mot. for Summ. J. at 2), the failure to arraign Ms. Jauch was solely attributable

to the Defendant Halford's willful refusal to contact anyone regarding his detention of

Ms. Jauch and to fulfill his constitutional duty to carry her to court for arraignment.

As established by stipulation, Ms. Jauch was told by jailers, after she declared her

innocence and requested to be taken before a judge to have her bail set, that she could

not appear before a judge until August.  For his part, the Defendant Halford told Debra

---

[1]The Court may take judicial notice that the Fifth Circuit Court Judicial District in
Mississippi consists of the counties of: Attala, Carroll, Choctaw, Grenada, Montgomery,
Webster, and Winston.  At all times relevant to this civil action the Circuit Judges were
Honorable Clarence E. "Cem" Morgan, III and Honorable Joseph H. Loper, Jr.

6

Odom that he did not have to take Ms. Jauch before a judge until August because she was being held on a *Capias* Warrant. As a direct result of the Defendants' deliberate failure to take Ms. Jauch before a judicial officer as required by law, Ms. Jauch languished in the Choctaw County Jail for ninety-six without the benefit of a court appearance for a crime she did not commit. Neither Mississippi law nor constitutional standards countenance this egregious denial of a prompt arraignment.

While not determinative of the constitutional standard, Mississippi statutes, and case law imposes the responsibility for ensuring that a detainee receives a prompt post-arrest appearance in court resides on the sheriff of a county.

In Mississippi, sheriffs "are final policymakers with respect to all law enforcement decisions made within their counties." Hampton Co. Nat'l Sur., LLC v. Tunica County, 543 F.3d 221, 227 (5th Cir. 2008) (quoting Brooks v. George County, 84 F.3d 157, 165 (5th Cir. 1996)). This final policymaking authority and responsibility extends to the administration of the county jail and the individuals detained in the county jail:

> The *sheriff shall have charge of the courthouse and jail of his county*, of the premises belonging thereto, *and of the prisoners in said jail*. He shall preserve the said premises and prisoners from mob violence, from any injuries or attacks by mobs or otherwise, and from trespasses and intruders. He shall keep the courthouse, jail, and premises belonging thereto, in a clean and comfortable condition, and it shall be his duty to prosecute all persons who are guilty of injuring or defacing same.

Miss. Code Ann. 19-25-69 (emphasis added). Mississippi law expressly designates the sheriff as the county jailer. See Miss. Code Ann. § 19-25-71(1) ("The sheriff shall be the jailer of his county and, in the performance of his duties as jailer, he shall employ a jailer or jailers to have charge of the prisoners in the jail . . . .")

In addition to vesting final policymaking authority with respect to all law enforcement decisions within their counties to sheriffs, Mississippi statutory law imposes affirmative duties on those sheriffs with respect to the courts in their counties and the detention of individuals committed to their custody by the courts :

> The *sheriff shall be the executive officer of the circuit and chancery court of his county*, and he shall attend all the sessions thereof with a sufficient number of deputies or bailiffs. He shall execute all orders and decrees of said courts directed to him to be executed. *He shall take into his custody, and safely keep, in the jail of his county, all persons committed by order of either of said courts, or by any process issuing therefrom, or lawfully required to be held for appearance before either of them.*

Miss. Code Ann. § 19-25-35 (emphasis added). The obligation attendant on a sheriff includes not only detaining an individual committed by court order but to detain them for appearance before the committing court. Further, an arresting officer "shall take the offender before the proper officer without unnecessary delay for examination of [her] case . . . ." Miss. Code Ann. § 99-3-17. The *Capias* Warrant addressed to the Defendant Halford according to its express terms required the Sheriff of Choctaw County to safely keep Ms. Jauch for the purpose of having her appear promptly after her indictment

8

before the Circuit Court of Choctaw County.  (Stipulated Facts Exh. B).

Though the Defendant Halford did not personally arrest Ms. Jauch, the capias warrant was addressed to him as Sheriff of Choctaw County, he had personal knowledge of her arrest and detention, and he was aware the dictates of this statute requiring examination of her case before the proper judicial officer was not complied with.  In addition, the Mississippi Supreme Court, through its rule making authority requires that arraignment "shall be held within thirty (30) days after the defendant is served with the indictment."[2]  Uniform Rules of Circuit & County Court 8.01.  Lastly, the *Capias* Warrant required the Sheriff of Choctaw County to "take Jessica Jauch if to be found in your County, and her safely keep, so that you have her body before the Circuit Court of the County of Choctaw . . . ."[3]

The duty of a sheriff in Mississippi to carry a detainee on a *Capias* Warrant before the proper court in a timely manner is longstanding.  See Bourdeaux v. Warren County, 66 Miss. 231, 232, 5 So. 227, 228 (1888) ("The capias being returnable forthwith, during

───────────────

[2]Rule 6.03 of the Uniform Rules of Circuit & County Court ("URCCC") requires that "[e]very person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance."  However, URCCC 6.05 exempts defendants under indictment from receiving an initial appearance.

[3]The *Capias* Warrant was issued on January 24, 2012 and called for Ms. Jauch to be taken before the Circuit Court on January 31, 2012, or within one week of arrest, to answer the indictment found against her.

9

the term of the court at which the same was awarded, . . . [i]t was the duty of the sheriff, after arrest, to take the prisoner immediately to court according to the mandate of the writ.")  As already noted, the *Capias* Warrant directed to the Defendant Halford to carry Ms. Jauch before the court on a specific date during the term of court she was indicted. Having arrested and detained Ms. Jauch, after the conclusion of the circuit court term, the Defendant Halford remained under an affirmative duty to carry Ms. Jauch before the circuit court immediately.

No legal impediment existed to arraigning Ms. Jauch between circuit court terms in vacation.  See Crossley v. Mississippi, 420 So. 2d 1376, 1380 (Miss. 1982) (holding "accused may be arraigned in vacation so long as the arraignment is publicly conducted in the place designated for holding court.") The only impediment to her arraignment was the Defendant Halford's inexcusable failure to carry her before a judge.

In Esparaza v. Mississippi, 595 So. 2d 418, 422-24 (Miss. 1992), the court found that the failure of sheriff's deputies to offer a preliminary hearing or inform a detainee of her right to a preliminary hearing, during the four months between her arrest and subsequent indictment, "unlawfully restrained [the detaineee's] liberty under the state laws."   Although the court found that the prejudice to the detainee was insufficient to justify reversing her conviction, the court recognized "it prejudices society as a whole that, before a court ever determines guilt, a sheriff can 'forget' the key until the next

10

grand jury term by failing to inform the accused of her valuable right to an adversarial

probable cause determination." Esparaza, 595 So. 2d at 424. As noted by the court:

> The varying and sometimes lengthy intervals between our counties' terms of court demand that a detainee be accorded the right to a preliminary hearing. Our rules impose on the state an affirmative duty to notify a detainee of that right. This case demonstrates the opportunity for grievous harm when local officials fail to discharge their mandated duties. An incarcerated person may suffer significant prejudice to her personal interests while she waits for a far-off grand jury to determine probable cause.

Id. at 423. The necessity for a prompt post-arrest arraignment applies with even greater

vigor when a detainee is forced to sit in jail awaiting a "far-off" term of court before

their fundamental rights to bail, counsel, and liberty are recognized. Even more so than

Ms. Esparaza, Ms. Jauch, innocent of any crime, deserved far better than for the

Defendant Halford to lock her up and forget that he held the proverbial key.

The duty to transport Ms. Jauch, wherever need be, after her arrest and in order

for her to receive a prompt hearing before a judicial officer, rests entirely with the

sheriff as noted by the Office of the Attorney General of the State of Mississippi:

> The Department of Public Safety respectfully request an official Attorney General's opinion concerning whose responsibility it is to take a prisoner before a court for an arraignment or to trial after a trooper places an arrested subject in a county jail. Is it the responsibility of the County Sheriff or the arresting officer?
>
> From our phone conversation, we understand the question to relate to who actually has the responsibility to physically transport or see to the transportation of the prisoner to a scheduled hearing. Once a suspect

11

arrested for a state violation by a highway patrol officer has been placed into custody of the county jail it becomes the duty of the sheriff to transport the prisoner to hearings. Such a prisoner is a county prisoner to the same extent as a prisoner arrested by a deputy sheriff. The duties of a sheriff over a jail are set forth in part at §§ 19-25-35, 19-25-69, and 19-25-71 of the Mississippi Code of 1972. These sections place prisoners under the sheriffs control . . . .

Miss. Att'y Gen. Op. No. 19920422 (April 22, 1992). Upon her arrest in Choctaw County, Ms. Jauch, contrary to the protestations of the Defendants, was held as a county prisoner on a state charge for which the county would be responsible for the costs of her prosecution and would receive any fines and assessments levied against her. See Miss. Const. Art. 14, § 261 ("The expenses of criminal prosecutions shall be borne by the county in which such prosecution shall be begun; and all fines and forfeitures shall be paid into the treasury of such county. Defendants, in cases of conviction, may be taxed with the costs.") The responsibility for assuring that she was taken before a judicial officer rested with the Defendant Halford and the Defendant Choctaw County.

The Fifth Circuit, in rejecting the individual defendants' assertions of qualified immunity, on a detainee's Fourteenth Amendment due process claim arising from a nine-month detention without a court appearance, held that the liberty interest asserted by the detainee, in freedom from improper use of the restraints of the criminal process, was clearly established in 1994-95 and the resulting detention without a court appearance was not objectively reasonable in light of clearly established legal rules.

12

<u>Jones v. City of Jackson</u>, 203 F.3d 875, 881 (5th Cir. 2000). In <u>Jones</u>, the court found no difficulty in holding the county sheriff and the sheriff's deputy who placed a detainer on the plaintiff responsible for failing to take the detainee before a judicial officer for a hearing or court appearance throughout a nine-month detention. <u>Jones</u>, 203 F.3d at 879 (finding plaintiff alleged sufficient facts to establish that county had custody of him and county officials caused illegal confinement by placing a detainer on him and failing to take him before the court as commanded by the bench warrant).

The Defendant Halford and the Defendant Choctaw County are not defendants because they failed to arraign Ms. Jauch, or appoint her counsel, or set her bail. The Defendant Halford and the Defendant Choctaw County are liable because they threw Ms. Jauch in their jail and threw away the key, thereby abnegating their constitutional duties to take her before a judicial officer so that she could be arraigned, have counsel appointed, and have her bail set. The county sheriff is the only individual with the obligation and capacity to know the status of every prisoner in his jail and the individual with the duty to ensure that each of those prisoners receive a timely appearance before a judicial officer. <u>See</u> Miss. Code Ann. § 19-25-63 (" It shall be the duty of every sheriff to keep a record, to be called the "Jail docket," in which he shall note each warrant or mittimus by which any person shall be received into or placed in the jail of his county, entering the nature of the writ or warrant, by whom issued, the

13

name of the prisoner, when received, the date of the arrest and commitment, for what crime or other cause the party is imprisoned, and on what authority, how long the prisoner was so imprisoned, how released or discharged, and the warrant therefor or the receipt of the officer of the penitentiary when sent there. All of said entries shall be full and complete, so as to give a perfect history of each case . . . .")

It is inconceivable, in the year Ms. Jauch was arrested, 2012, that any Mississippi sheriff would be unaware of the requirement that a detainee must be taken before a judicial officer "without unnecessary delay." In the year 2016, it is equally inconceivable that a Mississippi sheriff would attempt to deflect responsibility for their constitutionally deficient acts and omissions, in failing to take a prisoner before the court, onto a Circuit Judge, a Circuit Clerk, a District Attorney, or a public defender. Neither the Defendant Halford nor the Defendant Choctaw County are entitled to summary judgment as they are liable for failing to carry Ms. Jauch before a judicial officer and violating her constitutional rights.

    B.    <u>The Failure of the Defendant Halford and the Defendant Choctaw County to Take Ms. Jauch Before a Judicial Officer for Ninety-Six Days after Her Arrest by Warrant Violated Her Rights Under the Sixth, Eighth, and Fourteenth Amendments.</u>

Ms. Jauch filed her Motion [Doc. 20] for Partial Summary Judgment and her Memorandum [Doc. 21] in Support of Motion for Summary Judgment setting forth the legal basis for her claim that the Defendant Halford and the Defendant Choctaw County

14

are liable as a matter of law for her ninety-six day detention after her arrest on a *Capias* Warrant without appearing before a judicial officer. In responding to the Defendants' Motion [Doc. 18] for Summary Judgment, Ms. Jauch hereby fully incorporates her Motion for Partial Summary Judgment and Memorandum in Support of Motion for Summary Judgment.

Ms. Jauch alleges that her ninety-six day detention at the Choctaw County Jail without being taken before a judicial officer for arraignment violated her rights under the Sixth, Eighth and Fourteenth Amendments. As already mentioned, the Defendants agree that Ms. Jauch's constitutional rights were violated, but aver that other public officials were responsible for those violations. In responding to the Defendants' Motion for Summary Judgment, Ms. Jauch spells out the legal basis for her claims.

      1.    Sixth Amendment

Ms. Jauch contends that her detention at the Choctaw County jail for ninety-six days without being taken before a judge violated her clearly established Sixth Amendment rights to be informed of the charges against her and her right to counsel.

"A [criminal] defendant's right to be informed of the nature and cause of an accusation brought against [her] does not exist until the Government is committed to a prosecution." Jones v. City of Jackson, 203 F.3d at 880 (citing Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987)). What constitutes a commitment to prosecute is a question of

federal law unaffected by allocations of power among state officials under a State's law. See Rothgery v. Gillespie County, Tex., 554 U.S. 191, 207 (2008) (citing Moran v. Burbine, 475 U.S. 412, 429 n.3 (1986)). The Unites States Supreme Court has identified the commitment to prosecute to arise from "'the initiation of adversary judicial criminal proceedings whether by way of formal charge, preliminary hearing, *indictment*, information, or arraignment.'" Rothgery, 554 U.S. at 198 (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion))). According to well-established precedent, the filing of the indictment against Ms. Jauch, on January 24, 2012, constituted a commitment to prosecute and her Sixth Amendment right to be informed of the nature and cause of the accusation brought against her attached at that moment. Jones, 203 F.3d at 880.

With respect to Ms. Jauch's right to counsel under the Sixth Amendment, that right attached when adversary proceedings, through the filing of an indictment, were initiated against Ms. Jauch. Id. (citing United States v. Gouveia, 467 U.S. 180, 187-88 (1984)).

It is undisputed that despite Ms. Jauch's clearly established constitutional rights to be informed of the nature and cause of the accusation against her, and the right to counsel, the Defendant Halford deliberately refused and failed to take her before a judicial officer for ninety-six days. When Ms. Jauch protested her innocence to the

16

charge and requested of jail personnel that she be taken before a judge so that she could have her bail set, she was told by jail personnel that she would not be permitted to see a judge until several months in the future, based on their discussion of the matter with the Defendant Halford. In addition, the Defendant Halford personally informed Ms. Jauch's friend, Ms. Odom, that he was not required to take Ms. Jauch before a judge until the next term of court, in August, because she had been arrested on a *Capias* Warrant.

The Defendants deliberate refusal to fulfill their constitutional obligations to provide Ms. Jauch with a prompt appearance before a judicial officer constituted deliberate indifference to Ms. Jauch's federal rights to presentment and counsel for which no defense to liability exists. Unless the Defendants took the purely ministerial act of taking Ms. Jauch before a judicial officer her Sixth Amendment rights were denied to her. The requirements of the Sixth Amendment for notice to the accused and the right to counsel were violated and liability must be imposed on these Defendants.

2.    Eighth Amendment

Ms. Jauch contends that her detention at the Choctaw County jail for ninety-six days without being taken before a judge violated her clearly established Eighth Amendment right to bail.

"[W]hile there is no absolute federal constitutional right to bail pending appeal,

17

once a state makes provisions for such bail, the Eighth and Fourteenth Amendments require that it not be denied arbitrarily or unreasonably." Young v. Hubbard, 673 F.2d 132, 134 (5th Cir. 1982) (quoting Finetti v. Harris, 609 F.2d 594, 599 (2d Cir. 1979)). Upon her arrest Ms. Jauch was detained on a bailable non-capital offense. However, despite her repeated requests to be brought before a judge so that her bail could be set, the Defendants arbitrarily refused to take her before a judicial officer who could set her bail. It was not until Ms. Jauch languished in the Choctaw County Jail for ninety-six days that she appeared before a judge and had her bail set. Within one week of having her bail set, Ms. Jauch posted bond.

The Defendants deliberate refusal to fulfill their constitutional obligations to provide Ms. Jauch with a prompt appearance before a judicial officer constituted deliberate indifference to Ms. Jauch's federal rights for which no defense to liability exists. When the Defendant Halford and the Defendant Choctaw County intentionally refused to provide Ms. Jauch with a prompt pretrial appearance before a judicial officer the requirement of the Eighth Amendment for reasonable bail was violated and liability for that failure must be imposed on these Defendants.

3.      Fourteenth Amendment

Ms. Jauch contends that her detention at the Choctaw County Jail for ninety-six days without being taken before a judge for an initial appearance or arraignment

18

violated her Fourteenth Amendment due process right to liberty. Given the stipulated facts and clearly established law, there is no genuine issue of material fact regarding the Defendant Choctaw County's and the Defendant Halford's liability to Ms. Jauch for her ninety-six day detention without affording her an initial appearance or arraignment.

At issue is Ms. Jauch's right to a prompt appearance in court after arrest by warrant, which is controlled by the due process clause of the Fourteenth Amendment. Hayes v. Faulkner County, 388 F.3d 669, 673 (8th Cir. 2004). "Prohibition against improper use of the 'formal restraints imposed by the criminal process' lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause. Jones, 203 F.3d at 880-81 (quoting Board of Regents v. Roth, 408 U.S. 564, 575 (1972)). Ms. Jauch's due process right in freedom from the "improper use of the "formal restraints imposed by the criminal process has both a substantive and a procedural component. See Hayes, 388 F.3d at 673 (38-day detention without court appearance violates substantive due process); Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992) (114-day detention without arraignment, bail hearing, or trial violated detainees procedural due process right in freedom from prolonged pre-arraignment incarceration).

The morning following her detention at the Choctaw County Jail, Ms. Jauch was served with a copy of the indictment charging her with sale of a controlled substance.

Upon being served with the indictment Ms. Jauch protested her innocence to jail personnel and requested to be brought before a judge so that she could be set a bond and post bail. These protests of innocence and requests to appear before a judge continued throughout Ms. Jauch's detention. Choctaw County Jail personnel, after consulting with the Defendant Halford, responded to Ms. Jauch by telling her that she could not be taken before a judge until August. A direct inquiry to the Defendant Halford regarding when Ms. Jauch would be taken before a judge, was met with the Defendant Halford's assertion that he had no obligation to take Ms. Jauch before a judge because she was arrested on a *Capias* Warrant. Ultimately, Ms. Jauch remained detained by the Defendants from April 26, 2012 until July 31, 2012, before she was finally taken by jail personnel to appear before a judge.

Substantially shorter and slightly longer delays, after an arrest by warrant, have been found to run afoul of the Fourteenth Amendment and violate a detainee's procedural and substantive due process rights. See, e.g. Hayes, 388 F.3d at 673 (38-day detention based on bench warrant without court appearance violates substantive due process); Armstrong v. Squadrito, 152 F.3d 564, 570 (7th Cir. 1998) (57-day detention on a (civil) body-attachment warrant without an initial appearance violated substantive due process); Oviatt v. Pearce, 954 F.2d at 1477 (114-day detention on a bench warrant without arraignment, bail hearing, or trial violated detainees Fourteenth Amendment

20

liberty interest in freedom from prolonged pre-arraignment incarceration); Coleman v. Frantz, 754 F.2d 719, 723-24 ( 7th Cir. 1985) (18-day detention after arrest by warrant but before initial appearance violated detainee's substantive due process rights); McDonald v. Dunning, 760 F. Supp. 1156, 1163-64 (E.D. Va. 1991) (21-day incarceration of detainee without being informed of the charges against him and appearing before a magistrate or judge constitute a violation of Fourteenth Amendment right not to be deprived of liberty without due process of law).

In all of these cases, the law enforcement agency and individuals responsible for the physical custody of the detainees were found to be liable for the failure to promptly carry the detainees before a judicial officer. The reason for imposing this liability was based "'. . . upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.'" Hayes, 388 F.3d at 674 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 853 (1998)).

As the Hayes court noted in finding the county defendant liable for the prolonged detention of a prisoner without an arraignment:

> *The County's policy was to submit the names of confinees to the court and then wait for the court to schedule a hearing.*[4] *That policy attempts to delegate the*

---

[4]The Defendant Halford had no policy of notifying the court of the detainees in its custody much less notifying the court of the detainees in need of an initial appearance or arraignment. As previously noted, when faced with a detainee in need of

> *responsibility of taking arrestees promptly before a court.* In <u>Oviatt v. Pearce</u>, 954 F.2d 1470 (9th Cir. 1992), a policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned. <u>Id.</u> at 1478. "A policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." <u>Armstrong</u>, 152 F.3d at 578-79.
>
> Because the County's policy here attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees' due process rights.

<u>Id.</u> at 374. (emphasis added) Similarly, the Defendants here attempt to delegate away their constitutional duty to provide Ms. Jauch with a prompt appearance by deflecting liability onto other public officials with no such duty.

Assessing the liability of the individual defendant, primarily responsible for the operation of the detention center, on facts eerily similar to this civil action, the <u>Hayes</u> court found:

> Kelley helped promulgate and enforce the deliberately indifferent policy. Receiving Hayes's specific appearance grievance, Kelley made a conscious decision to do nothing. Kelley testified that he would have followed the same course of conduct even if Hayes were held for 99 days. While Hayes sat in the Center for 38 days, Kelley consciously disregarded the violation of his constitutional rights. <u>See</u> <u>Armstrong</u>, 152 F.3d at 577. That conscious disregard is deliberate indifference violating the standards of due process.

<u>Id.</u>

This Court could easily substitute the name of the individual defendant in <u>Hayes</u>,

---

an arraignment, he sat on his hands and did nothing while Ms. Jauch repeated her pleas of innocence and to see a judge so that her bail could be set.

Kelley, with the name Halford; and the name of the county, Faulkner County, with Choctaw County, and arrive at exactly the same conclusion. Ms. Jauch's constitutional right to liberty protected by the Fourteenth Amendment was violated by the Defendant halford and the Defendant Choctaw County.

IV.     CONCLUSION

For the reasons stated above, Ms. Jauch requests that this Court overrule the Defendants Motion [Doc. 18] for Summary Judgment and instead enter judgment against the Defendant Halford and the Defendant Choctaw County with respect to their liability to Ms. Jauch for violating her fundamental rights under the Sixth Amendment, Eighth Amendment, and Fourteenth Amendment.

Respectfully submitted, this the 20th day of July 2016.

/s/ Victor Israel Fleitas

_____

VICTOR I. FLEITAS
MS BAR NO. 10259

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
(662) 840-0270 / Telephone
(662) 840-1047 / Facsimile
fleitasv@bellsouth.net / Email

Attorney for Jessica Jauch

CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2016 I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the

following:

Daniel J. Griffith, Esq.
Jacks, Griffith & Luciano
Post Office Box 1209
Cleveland, Mississippi 38732
dgriffith@jlpalaw.net

This the 20th day of July, 2016.

/s/ Victor Israel Fleitas

_____

VICTOR I. FLEITAS