# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――――――――――

No. 16-60690

―――――――――――――

D.C. Docket No. 1:15-CV-75

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2017

Lyle W. Cayce
Clerk

JESSICA JAUCH,

      Plaintiff - Appellant

v.

CHOCTAW COUNTY; CLOYD HALFORD, in his Individual Capacity,

      Defendants - Appellees

Appeal from the United States District Court for the
Northern District of Mississippi

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that defendants-appellees pay to plaintiff-appellant the costs on appeal to be taxed by the Clerk of this Court.



Certified as a true copy and issued
as the mandate on **Apr 06, 2018**

Attest: *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60690

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2017

Lyle W. Cayce
Clerk

JESSICA JAUCH,

> Plaintiff - Appellant

v.

CHOCTAW COUNTY; CLOYD HALFORD, in his Individual Capacity,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

REAVLEY, Circuit Judge:

Jessica Jauch was indicted by a grand jury, arrested, and put in jail—where she waited for 96 days to be brought before a judge and was effectively denied bail. The district court found this constitutionally permissible. It is not. A pre-trial detainee denied access to the judicial system for a prolonged period has been denied basic procedural due process, and we therefore reverse the district court's judgment.

## I.    BACKGROUND

Upon the word of a confidential informant, a grand jury indicted Jessica Jauch for the sale of a Schedule IV controlled substance on January 24, 2012.

No. 16-60690

That same day, the Choctaw County Circuit Clerk issued a capias warrant. The capias reads:

> You are hereby commanded to take **Jessica Jauch** if to be found in your County, and him/her safely keep, so that you have his/her body before the **Circuit Court of the County of Choctaw**, in said State, at the Courthouse in the town of Ackerman, MS, on the **31st day of January, 2012**, then and there to answer the State of Mississippi on an **indictment found against him/her on the 24th day of January, 2012, for:**

Ct. 1: **Sale of a Schedule IV Controlled Substance**

On April 26, 2012, Starkville Police Department officers pulled Jauch over, issued her several traffic tickets, and informed her of an outstanding misdemeanor warrant in Choctaw County. Choctaw County deputies took custody of Jauch and transported her to the Choctaw County Jail where, the next morning, she was served with the misdemeanor warrant and the capias. Jauch cleared the misdemeanor warrant within a few days. She nonetheless remained detained on the capias, and her requests to be brought before a judge and allowed to post bail were denied. Jail officials informed Jauch that Sheriff Halford had confirmed she could not be taken before a judge until August when the next term of the Circuit Court commenced. When a friend of Jauch's reached the sheriff on the telephone, he told her the same thing. Jauch's protestations of innocence were ineffectual.

Ninety-six days after being taken into custody, Jauch's case moved forward. She received an appointed attorney, waived formal arraignment, had bail set, and had a trial date set. Six days later, on August 6, 2012, she posted bail. Before the end of the month, the prosecutor reviewed the evidence against Jauch and promptly moved to dismiss the charge. On January 29, 2013, the Circuit Court of Choctaw County entered the dismissal. It is undisputed that Jauch was innocent all along, as she had claimed from behind bars.

2

No. 16-60690

On April 21, 2015, Jauch sued under 42 U.S.C. § 1983 alleging Sheriff Halford and Choctaw County caused her constitutional deprivations. Both parties eventually moved for summary judgment. The district court observed that Jauch asserted violations of the Sixth, Eighth, and Fourteenth Amendments but treated the Fourteenth Amendment claims (procedural and substantive due process) as an attack on the original probable cause determination underlying her arrest. It ruled against her on the basis of procedural due process because state law renders the probable cause determination of a grand jury conclusive, meaning Jauch was not entitled to a hearing (like an initial appearance or preliminary hearing) where she could challenge that determination. With respect to substantive due process, the district court found the Fourth Amendment applied more squarely to such a claim, and then found the Fourth Amendment was not violated *because* the undisputedly valid probable cause determination supported the arrest. We note that Jauch never alleged a Fourth Amendment violation nor sought to challenge the probable cause determination made by the grand jury.

The district court also ruled against Jauch with respect to her Sixth and Eighth Amendment claims. It further ruled that Choctaw County was not subject to municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978), and that Sheriff Halford was entitled to qualified immunity. Based on these rulings, the district court denied Jauch's motion for summary judgment and ordered judgment in favor of the defendants. Jauch timely appealed.

## II.    OUR REVIEW

"We review a district court judgment on cross-motions for summary judgment de novo." *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007). Each party's motion is considered "independently, viewing the evidence and inferences in the light most favorable to the nonmoving

No. 16-60690

party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III.   DISCUSSION

We address only the Fourteenth Amendment and hold that this excessive detention, depriving Jauch of liberty without legal or due process, violated that Amendment; for that reason, her motion for summary judgment should have been granted as to the Fourteenth Amendment Due Process claim.

## A.   Moving Beyond the Fourth Amendment

The district court treated Jauch's due process claim as a Fourth Amendment claim, reasoning that "[b]ecause an arrest is a seizure, . . . the more particularized Fourth Amendment analysis [is] appropriate" and concluding that because probable cause supported Jauch's arrest, there was no constitutional violation.  This analysis dooms Jauch's claim and seemingly means the Constitution is not violated by prolonged pretrial detention so long as the arrest is supported by probable cause.

While this appeal was pending, the Supreme Court issued *Manuel v. City of Joliet*, which held that a defendant seized without probable cause could challenge his pretrial detention under the Fourth Amendment. 137 S.Ct. 911, 917 (2017). *Manuel* does not address the availability of due process challenges after a legal seizure, and it cannot be read to mean, as Defendants contend, that *only* the Fourth Amendment is available to pre-trial detainees.  For example, even when the detention is legal, a pre-trial detainee subjected to excessive force properly invokes the Fourteenth Amendment.  *See, e.g.*, *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).  So, too, may a legally seized pre-trial detainee held for an extended period without further

No. 16-60690

process.  This Court has already addressed the interplay between the Fourth and Fourteenth Amendment, and *Manuel* fits with these prior cases.

In 1996, we held the Fourth Amendment inapplicable to the usual pretrial detainee who was *properly arrested* and awaiting trial.  *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 167 (5th Cir. 1996).  When confronted with a defendant held upon probable cause who spent nine months in pretrial detention, we found the Fourth Amendment inapplicable and the due process clause of the Fourteenth Amendment implicated.  *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).  The Fourth Amendment could not have been violated, we explained, because the plaintiff was originally arrested "pursuant to a valid court order," but the "alleged nine month detention without proper due process protections" would amount to a due process violation if proven.  *Id.* By contrast to these cases, where a claim of unlawful detention was accompanied by allegations that the initial arrest was not supported by valid probable case, we held that analysis was proper "under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause."  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015); *see also Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc).  Just like *Manuel*.

## B.    Due Process

This case is about due process, and the question raised here was answered in *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000).[1]  Joseph

---

[1] In *Harris v. Payne*, an unpublished case, we find a potential suggestion that *Jones* is inconsistent with prior cases.  *See* 254 F.App'x 410, 420 n.2 (5th Cir. 2007) (per curiam). Having surveyed the area, we are confident that it is not.  *Harris* is easily distinguishable; that case involved official negligence and applied the rule that negligent deprivations of life, liberty, or property do not implicate Due Process.  *See id.* at 419–21.  Given Jauch's 96-day detention without a hearing of any sort, this is also not a case "where only 'immediacy' or lack of it was the issue presented to the court."  *Rheaume v. Texas Dep't of Pub. Safety*, 666 F.2d 925, 929 (5th Cir. 1982) (citing *Perry v. Jones*, 506 F.2d 778, 780–81 (5th Cir. 1979); *Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971)); *see also Kulyk v. United States*, 414 F.2d 139, 141–42 (5th Cir. 1969).  Finally, having been arrested upon valid probable case, Jauch

No. 16-60690

Jones was held on a bench warrant for nine months "without hearing or court appearance." *Id.* at 878. Upon release, he sued. When the case reached us, we held that his right to due process was violated because "[p]rohibition against improper use of the 'formal restraints imposed by the criminal process' lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause." *Id.* at 880 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972)).

*Jones* is binding, but it did not state whether the due process violation was of the procedural or substantive variety. Other circuits appear split on the question. *Compare Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985) (substantive due process); *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669 (8th Cir. 2004) (substantive due process), *with Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) (procedural due process); *see also Armstrong v. Squadrito*, 152 F.3d 564, 575 & n.4 (7th Cir. 1998) (specifically rejecting *Oviatt* and its procedural due process approach).

We find the answer from Supreme Court cases. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976 (1974). This is true with respect to both procedural and substantive due process. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 1716 (1998). When "the fault lies in a denial of fundamental procedural fairness," the question is one of procedural due process. *Id.* at 845–46, 118 S.Ct. at 1716 (citing *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995 (1972)). The procedural due process analysis starts with one inquiry: whether the state has "deprived the

---

properly does not assert a right to a preliminary hearing, *see Stephenson v. Gaskins*, 539 F.2d 1066, 1067–68 & n.* (5th Cir. 1976) (per curiam), and this case does not involve the rule that "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 866 (1975) (citing *Scarbrough v. Dutton*, 393 F.2d 6 (5th Cir. 1968) (per curiam)).

No. 16-60690

individual of a protected interest—life, liberty, or property." *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984).

Here, we deal with a deprivation of a protected liberty interest due to an allegedly unfair procedural scheme. The Constitution itself protects physical liberty. *Jones*, 203 F.3d at 880–81; *see also Turner v. Rogers*, 564 U.S. 431, 445 131 S.Ct. 2507, 2518 (2011) (describing "loss of personal liberty through imprisonment" as sufficient to trigger Due Process protections). As a matter of procedure, defendants held in Choctaw County on capias warrants are held without an arraignment or other court proceeding until the circuit court that issued the capias next convenes. Our task is to determine the constitutionality of this procedure, and we are satisfied that Jauch's right to procedural due process is most squarely implicated. Without deciding whether substantive fundamental unfairness may support a due process holding with little procedural deficiency, we hold that prolonged-detention cases do raise the immediate question of whether the pre-trial detainee's procedural due process rights have been violated.

Upon identifying a protected liberty interest, courts ask what process is due. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989). In asking that question, which test applies? Ordinarily, "[t]he starting point for any inquiry into how much 'process' is 'due' must be the Supreme Court's opinion in *Mathews v. Eldridge*," and we would consider the private interest at stake, the risk of erroneous deprivations under existing procedures in light of available alternative or additional procedures, and the government's interest. *Buttrey v. United States*, 690 F.2d 1170, 1177 (5th Cir. 1982) (citing 424 U.S. 319, 96 S.Ct. 893 (1976)). *Oviatt* applied this test.

The Supreme Court subsequently clarified the law, holding "that 'the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which . . . are part of the

7

No. 16-60690

criminal process,' reasoning that because the 'Bill of Rights speaks in explicit terms to many aspects of criminal procedure,' the Due Process Clause 'has limited operation' in the field." *Kaley v. United States*, 134 S.Ct. 1090, 1101 (2014) (quoting *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 2576 (1992)) (alterations in original)).  The Fifth Circuit has had little occasion to apply *Medina*, and the parties neglect it entirely.  The Supreme Court, however, has turned to *Medina* repeatedly,[2] and we follow that Court's example when determining which procedural due process test applies.  *See Weiss v. United States*, 510 U.S. 163, 177, 114 S.Ct. 752, 760 (1994) (a case arising "in the military context," where one party urged application of *Mathews*, the other advocated for *Medina*, and the Supreme Court held both inapplicable and applied a standard found in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281 (1976)).

As used in *Medina*, the phrase "part of the criminal process" has been described as "rules concern[ing], for example, the allocation of burdens of proof and the type of evidence qualifying as admissible." *Nelson v. Colorado*, 137 S.Ct. 1249, 1255 (2017).  This is not a case about presumptions, evidence, or any workaday aspect of the process-in-action.  This is a case about confinement with process deferred.  Moreover, while *Medina* was premised on the "considerable expertise" of the states "in matters of criminal procedure and the criminal process" and represents "substantial deference to legislative judgments in this area," 505 U.S. at 445–46, 112 S.Ct. at 2577, the procedure challenged here does not represent the legislative judgment of the state and indeed conflicts with the Mississippi legislature's decree that all defendants be

---

[2] *See, e.g.*, *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69, 129 S.Ct. 2308, 2320 (2009); *Cooper v. Oklahoma*, 517 U.S. 348, 364, 116 S.Ct. 1373, 1381 (1996); *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 2017 (1996); *Herrera v. Collins*, 506 U.S. 390, 407–08, 113 S.Ct. 853, 864 (1993).

No. 16-60690

arraigned within 30 days.  URCCC 8.01.[3]  There is thus room to argue that the *Mathews* test is more appropriate under the circumstances.  Ultimately, we again follow the Supreme Court's example, choosing not to decide which test applies "because we need not do so."  *Kaley*, 134 S.Ct. at 1101.

The *Medina* test represents the "narrower inquiry" and is "far less intrusive than that approved in *Mathews*."  505 U.S. at 445–46, 112 S.Ct. at 2577.  "A rule of criminal procedure usually does not violate the Due Process Clause unless it (i) 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or (ii) 'transgresses any recognized principle of 'fundamental fairness' in operation.'"  *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 726 (D.C. Cir. 2017) (quoting *Medina*, 505 U.S. at 446, 448, 112 S.Ct. at 2577–78); *see also Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69, 129 S.Ct. 2308, 2320 (2009).  Even under the deferential *Medina* test, the indefinite-detention procedure violated Jauch's right to procedural due process.

 "Historical practice and, to a lesser extent, contemporary practice" guide our first inquiry.  *Kincaid*, 854 F.3d at 726.  For the following reasons, we conclude that indefinite pre-trial detention without an arraignment or other court appearance offends fundamental principles of justice deeply rooted in the traditions and conscience of our people.  The same traditions that birthed our Sixth Amendment right to a speedy trial and Eighth Amendment prohibition of excessive bail condemn the procedure at issue.

Sir Edward Coke addressed pre-trial detention in 1681, explaining that judges of the period "have not suffered the prisoner to be long detained, but at their next coming have given the prisoner full and speedy justice, by due trial,

---

[3] Mississippi's Uniform Circuit and County Rules have recently been replaced by the Mississippi Rules of Criminal Procedure and were deleted effective July 1, 2017.

No. 16-60690

without detaining him long in prison." COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 43 (Rawlins, 6th ed. 1681). "Coke's Institutes were read in the American Colonies by virtually every student of the law." *Klopfer v. State of N.C.*, 386 U.S. 213, 225, 87 S.Ct. 988, 994 (1967). And the Supreme Court quoted this very passage in holding "that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." *Id.* at, 223 87 S.Ct. at 993. What if judges were unavailable? Promulgated in 1166, the Assize of Clarendon provided an answer, decreeing that in cases where the usual judge was unavailable, another judge would be located that justice be not delayed.[4] Assize of Clarendon ¶ 4 (1166); *see also Klopfer*, 386 U.S. at 223 n.9, 87 S.Ct. at 993 n.9.

The speedy trial clause has three distinct purposes, only one of which is protection against "undue and oppressive incarceration prior to trial." *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776 (1966). Thus, rather than embodying and defining a right against extended pre-trial detention, the clause is "an important safeguard" against it. *Id.* This is, therefore, not a case where the inapplicability of a specific constitutional provision means arguments under the due process clause are not well taken. *Compare Sattazahn v. Pennsylvania*, 537 U.S. 101, 116, 123 S.Ct. 732, 742 (2003) (refusing "to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause"). Rather, the right to a speedy trial "has its roots at the very foundation of our English law heritage" and *grows out of* the fundamental propositions set forth by Coke. *See Klopfer,* 386 U.S. at 223, 87 S.Ct. at 993. The Sixth Amendment's

---

[4] The Assize of Clarendon set forth basic rules of criminal and civil procedure and has thrice been cited by the Supreme Court as instructive with respect to American practices and traditions. *See Klopfer*, 386 U.S. at 223, 87 S.Ct. at 993; *Russell v. United States*, 369 U.S. 749, 761, 82 S.Ct. 1038, 1045 (1962); *Hurtado v. California*, 110 U.S. 516, 529, 4 S.Ct. 111, 117 (1884).

No. 16-60690

inapplicability here does not delimit "the traditions and conscience of our people." *Medina*, 505 U.S. at 459, 112 S.Ct. at 2585 (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 2322 (1977)); *see also* U.S. Const. amend. IX. And so we reject any suggestion that the Sixth Amendment's speedy-trial clause serves as the only limit on prolonged pretrial detention.[5]

Even in distant times, a trial could not always be held promptly. The expectation was not that the accused would wait in jail, but that (if eligible) he would be swiftly released on bail. *See* 2 F. POLLOCK & F. MAITLAND, HISTORY OF ENGLISH LAW 580–88 (2d ed. 1905). Ancient writs used to procure conditional release gradually gave way to the common law writ of habeas corpus. *See id.* at 582–86; 1 W. HOLDSWORTH, HISTORY OF ENGLISH LAW 95–97 (1903). In both eras, just as judicial absenteeism would not justify stalling prosecution, nor would it excuse the withholding of bail. POLLOCK & MAITLAND, *supra*, at 583; 3 W. Blackstone, Commentaries *131. There was a period, however, when the availability of bail in "vacation-time" came into doubt.[6] *See* Opinion on the Writ of Habeas Corpus, 97 Eng. Rep. 29, 31–51 (H.L. 1758) (Wilmot, J.), *in* 3 THE FOUNDERS' CONSTITUTION 313–24 (1987). The threat that bail might be unavailable out of term served as a catalyst for

---

[5] *See Baker*, 443 U.S. at 144, 99 S.Ct. at 2694 (noting pre-trial detention "in the face of repeated protests of innocence" would eventually violate the right to a speedy trial "even though the warrant under which [the detainee] was arrested and detained met the standards of the Fourth Amendment," and suggesting that "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law'" as well).

[6] The causes and extent of this problem are matters of debate, but not the problem itself. For a sampling, compare *Parker v. Ellis*, 362 U.S. 574, 584, 80 S.Ct. 909, 915 & nn.12–13 (1960) (Warren, J., dissenting) (discussing the writ's nature as a "prerogative" writ, and asserting non-use during vacation-time was a pretextual means of keeping enemies of the king incarcerated), with PAUL D. HALLIDAY, HABEAS CORPUS: FROM ENGLAND TO EMPIRE 55–58, 236–40 (2010) (minimizing concerns about the writ's use in vacation-time, and attributing diminished use to genuine confusion in the law).

11

No. 16-60690

the Habeas Corpus Act of 1679. *See* W. CHURCH, WRIT OF HABEAS CORPUS §§ 16–17, p. 18–20 (2d ed. 1893).

"[C]oncerned exclusively with providing an efficacious remedy for pretrial imprisonment,"[7] *Peyton v. Rowe*, 391 U.S. 54, 60 n.12, 88 S.Ct. 1549, 1552 n.12 (1968), the Act condemned a system under which defendants had been "long detained in prison, in such cases where by law they are bailable." 31 Car. 2, ch. 2, § 1. It conclusively imbued judges with the authority to grant habeas writs during vacation-time, and it provided that other officers could grant the writ if no justice of the King's Bench was available. § 3.

Together, the right to a speedy trial and the privilege to petition for habeas relief (and thus bail) protected unconvicted criminal defendants from lengthy pre-trial detention, even while the court was out of term. A.V. Dicey explained how they worked in tandem: "while the Habeas Corpus Act is in force no person committed to prison on a charge of crime can be kept long in confinement, for he has the legal means of insisting upon either being let out upon bail or else of being brought to a speedy trial."[8] THE LAW OF THE CONSTITUTION 214 (8th ed. 1915).

This is our adoptive tradition. At the embryonic stage, we claimed all the rights of Englishmen. *See Hurtado*, 110 U.S. at 540, 4 S.Ct. at 293. And while the impact in England of 1679's Habeas Corpus Act is subject to debate,

---

[7] The Act is most properly understood to create an effective remedy, and the substantive rights it vindicates are those found in the Magna Carta. *Boumediene v. Bush*, 553 U.S. 723, 740, 128 S.Ct. 2229, 2244 (2008). It would later "be described by Blackstone as the 'stable bulwark of our liberties,'" an observation not lost on the Founders. *Id.* at 742, 128 S.Ct. at 2246 (quoting 1 W. Blackstone, Commentaries *137).

[8] To address a potential loophole of excessive bail, *see* HOLDSWORTH, *supra*, at 100, the English Bill of Rights sought to end any such practice with its decree "[t]hat excessive bail ought not be required." 1 W. & M., Sess. 2, c. 2; *see also* 4 W. Blackstone, Commentaries *294. This protection was incorporated into our Bill of Rights nearly verbatim, *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1409 (1977), further evidence that early Americans shared the English abhorrence of unrestrained pre-trial detention.

No. 16-60690

this country embraced it enthusiastically. 3 J. STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1335; Amanda L. Tyler, *A "Second Magna Carta": The English Habeas Corpus Act and the Statutory Origins of the Habeas Privilege*, 91 NOTRE DAME L. REV. 1949, 1986–89 (2016). The speedy trial right and habeas remedy are written into our Constitution, as is the prohibition of excessive bail. So, too, the requirement that persons be not deprived of liberty without due process. Never have criminal defendants arrested between court terms lawfully been committed to a purgatory where these rights and protections are out of reach, the Constitution made to wait.

While lessons drawn from modern practice are of "limited relevance to the due process inquiry," the Supreme Court nonetheless surveys the field. *See Medina*, 505 U.S. at 447, 112 S.Ct. at 2578. We are aware of no statutory schemes that permit jailers to hold criminal defendants indefinitely or until the next term of court without bringing them before a judge. Rather, "ubiquitous" state rules require "the prompt taking of persons arrested before a judicial officer," and "[t]he most prevalent American provision is that requiring judicial examination 'without unnecessary delay.'" *Culombe v. Connecticut*, 367 U.S. 568, 587, 81 S.Ct. 1860, 1870 & n.26 (1961); *see also McNabb v. United States*, 318 U.S. 332, 342, 63 S.Ct. 608, 614 (1943). While this commonplace prompt-appearance requirement is not of Constitutional dimension, it shows that a procedure calling for extended pre-trial detention without any sort of hearing is alien to our law. There is no sanction, historical or modern, for the defendants' indefinite detention procedure, and we find that it fails *Medina*'s historical test.

The procedure also transgresses recognized principles of "fundamental fairness" in operation. *Medina*, 505 U.S. at 448, 112 S.Ct. at 2578. Prolonged pre-trial detention without the oversight of a judicial officer and the opportunity to assert constitutional rights is facially unfair. The Supreme

13

No. 16-60690

Court has recognized that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest" because "[p]retrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein*, 420 U.S. at 114, 95 S.Ct. at 863. Heaping these consequences on an accused and blithely waiting months before affording the defendant access to the justice system is patently unfair in a society where guilt is not presumed.

Moreover, if *Medina* is the proper test, it is because "[t]he Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order." 505 U.S. at 443, 112 S.Ct. at 2576. Here, the challenged procedure denies criminal defendants their *enumerated* constitutional rights relating to criminal procedure by cutting them off from the judicial officers charged with implementing constitutional criminal procedure.[9] *See Osborne*, 557 U.S. at 69, 129 S.Ct. at 2320 (describing *Medina* as satisfied where the challenged procedure is "fundamentally inadequate to vindicate the substantive rights provided"). This is unjust and unfair.

## C.    *Monell* Liability and Choctaw County

Municipalities cannot be held vicariously liable for the actions of their officials. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–93, 98 S.Ct. 2018, 2036–37 (1978). Direct liability is instead required. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which

---

[9] While we find that Jauch's Sixth and Eighth Amendment challenges are left, the complained-of delays relating to provision of counsel and bail are directly attributable to the indefinite detention procedure we find unconstitutional.

No. 16-60690

(2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The district court found that Choctaw County was not liable under *Monell*. It erred.

Jauch challenges the indefinite detention procedure. Accordingly, the first and second elements of our inquiry reduce to one question: Is the challenged procedure "an official policy" that was "promulgated by the municipal policymaker?" *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)). It is. There is no dispute that Sheriff Halford is the relevant policymaker. *See Brooks*, 84 F.3d at 165 ("Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties."). And, both prior to and during this litigation, Sheriff Halford and Choctaw County have cleaved to the indefinite detention procedure. Their position is that indefinite detention is and must be the policy in Choctaw County. Accordingly, resolution of the first and second elements is as clear as ever it could be. *See Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 1359 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.").

It is also obvious that the indefinite detention procedure caused the due process violation Jauch complains of—indefinite detention. "Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so," the causation determination "is straightforward." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997). The policy Jauch challenges cannot be separated from the procedure that we have found constitutionally deficient. They are one and the

15

No. 16-60690

same. In cases like this one, where "fault and causation" are "obvious," "proof that the municipality's decision was unconstitutional" establishes "that the municipality itself was liable for the plaintiff's constitutional injury." *Id.* at 406, 117 S.Ct. at 1389. While courts must be careful not to "blur[] the distinction between § 1983 cases that present no difficult questions of fault and causation and those that do," *id.* at 405, 117 S.Ct. at 1389, we have no trouble concluding that this is an obvious case.

Choctaw County's relevant policymaker instituted a policy whereby certain arrestees were indefinitely detained without access to courts or the benefit of basic constitutional rights. This unconstitutional policy was "the moving force" behind Jauch's constitutional injury. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2038. Under *Monell* and its progeny, Choctaw County is liable.

## D.    Qualified Immunity and Sheriff Halford

Sheriff Halford asserts qualified immunity. Jauch bears the burden of showing that he is not so entitled. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). We have held that the indefinite detention procedure violated Jauch's Fourteenth Amendment right to due process. The only question, therefore, is whether Jauch's "right was 'clearly established' at the time of the challenged conduct." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).

We have spilled much ink to thoroughly establish our constitutional footing, an effort we found necessary in light of *Jones'* limited analysis. That explication does not diminish the *Jones* holding, however—prolonged detention without the benefit of a court appearance violates the detainee's Fourteenth Amendment right to due process. 203 F.3d at 880–81. The right at issue here was clearly established and its contours "sufficiently clear" that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior

16

No. 16-60690

to bringing them before a judge. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

And so we held in *Jones* itself, ruling the individual defendants, a sheriff and his deputy, not entitled to qualified immunity. *Id.* at 881. Sheriff Halford's claim to qualified immunity is less compelling than was the claim of those Mississippi law enforcement officers. Tellingly, Sheriff Halford's arguments relating to qualified immunity do not even mention *Jones*. In fact, at one point in this litigation, he conceded that that "the Choctaw County Sheriff's Office, Choctaw County District Attorney or Circuit Court Judge *clearly* should have provided Plaintiff Jauch with an appearance before the Circuit Court of Choctaw County" within the 30 days provided for by state law. (Emphasis added.) While he attempted to spread the blame to other officials, his actions and decisions are the cause of Jauch's constitutional injury. Either Sheriff Halford is plainly incompetent, or he knowingly violated the law.

Sheriff Halford's lone argument regarding qualified immunity is that "[f]unctions of state officials do not impute legal duties actionable by federal tort to a county official simply because the applicable state official is otherwise immune." Translated from legalese, the assertion is that Jauch sued him only because the truly responsible parties, judges of the circuit court, are immune from suit. This is simply wrong. Sheriff Halford is responsible for those incarcerated in his jail, Miss. Code Ann. § 19-25-69, and the capias did not require him to impose the unconstitutional detention policy. Moreover, in an analogous context, the Supreme Court of Mississippi has made clear the responsibility of county sheriffs to hold detainees in a manner consistent with their oaths to uphold the federal and state constitutions:

> To hold that the citizen may be arrested and held in jail without the benefit of bail until such time as a court may be held by the mayor or justice of the peace would mean that if [court could not be held for any reason], the sheriff could detain the accused

17

No. 16-60690

indefinitely, and in violation of his constitutional right to bail. . . .
An officer should need no authority other than that implied under
the Constitution and the statutes hereinbefore discussed to inform
him that he should not hold the citizen in custody for an
unreasonable length of time in violation of his constitutional right
to bail. It would be better that an offender, who is arrested without
a warrant by a sheriff or private person on their own authority, be
released without bail, than that he should be detained in jail in
violation of the Constitution.

*Sheffield v. Reece*, 28 So.2d 745, 748 (Miss. 1947).

The present case is different from *Sheffield*, a case of statutory
interpretation grounded in the state constitution, but the concerns animating
the Supreme Court of Mississippi in 1947 are present here. Sheriff Halford
should have known to put his constitutional obligations ahead of his
idiosyncratic understanding of state law requirements.[10] He is not entitled to
immunity.

## IV.    CONCLUSION

The judgment is REVERSED and the case is REMANDED for further
proceedings consistent with this opinion.

---

[10] Sheriff Halford has argued that he was not responsible for what happened to Jauch,
but we cannot know what he could have done to allow bail, or legal or judicial action because
he did nothing at all. We only know that the sheriff kept her in jail.

## BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

_____ v. _____ No. _____

The Clerk is requested to tax the following costs against: _____

| COSTS TAXABLE UNDER Fed. R. App. P. & 5ᵗʰ Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($500.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | Total $ _____ | | | | Costs are taxed in the amount of $ _____ | | | |

Costs are hereby taxed in the amount of $ _____ this _____ day of _____, _____.

State of
County of _____

LYLE W. CAYCE, CLERK

By _____         _____
                                                        **Deputy Clerk**

I _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This _____ day of _____, _____.

_____
**(Signature)**

**\*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS**

Attorney for _____

*FIFTH CIRCUIT RULE 39*

**39.1 Taxable Rates.** *The cost of reproducing necessary copies of the brief, appendices, or record excerpts shall be taxed at a rate not higher than $0.15 per page, including cover, index, and internal pages, for any for of reproduction costs. The cost of the binding required by 5ᵀᴴ CIR. R. 32.2.3 that mandates that briefs must lie reasonably flat when open shall be a taxable cost but not limited to the foregoing rate. This rate is intended to approximate the current cost of the most economical acceptable method of reproduction generally available; and the clerk shall, at reasonable intervals, examine and review it to reflect current rates. Taxable costs will be authorized for up to 15 copies for a brief and 10 copies of an appendix or record excerpts, unless the clerk gives advance approval for additional copies.*

**39.2 Nonrecovery of Mailing and Commercial Delivery Service Costs.** *Mailing and commercial delivery fees incurred in transmitting briefs are not recoverable as taxable costs.*

**39.3 Time for Filing Bills of Costs.** *The clerk must receive bills of costs and any objections within the times set forth in FED. R. APP. P. 39(D). See 5ᵀᴴ CIR. R. 26.1.*

FED. R. APP. P. 39.     COSTS

**(a) *Against Whom Assessed.*** The following rules apply unless the law provides or the court orders otherwise;

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

**(b) *Costs For and Against the United States.*** Costs for or against the United States, its agency or officer will be assessed under Rule 39(a) only if authorized by law.

**©) *Costs of Copies*** Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying.

**(d) *Bill of costs: Objections; Insertion in Mandate.***

(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 14 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

**(e) *Costs of Appeal Taxable in the District Court.*** The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.