**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

| | |
|---|---|
| _____ ) | |
| JESSICA JAUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:15-CV-75-SA-RP |
| ) | |
| CHOCTAW COUNTY and ) | |
| CLOYD HALFORD, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DECLARATION OF MICHAEL T. KIRKPATRICK**

I, Michael T. Kirkpatrick, pursuant to 28 U.S.C. § 1746, declare that:

1.      I am an attorney with Public Citizen Litigation Group (PCLG), 1600 20th Street, NW, Washington, DC 20009. I am a member in good standing of the bar of the District of Columbia and several federal courts including the Supreme Court of the United States. I was co-counsel for Jessica Jauch for purposes of responding to a petition for a writ of certiorari filed in the Supreme Court by Choctaw County and Cloyd Halford. I submit this declaration in support of an award of attorney fees incurred in connection with opposing the petition.

2.      PCLG is a public interest law firm that litigates cases at all levels of the federal and state judiciaries, including the U.S. Supreme Court. PCLG attorneys have argued sixty-four cases before the Supreme Court and have appeared as lead counsel, co-counsel, or in an amicus capacity in hundreds more. In 1990, PCLG founded the Alan Morrison Supreme Court Assistance Project to offer pro bono legal assistance at the certiorari stage, by opposing petitions for certiorari to protect public interest victories in lower courts and filing petitions for certiorari asking the

1

Supreme Court to review open legal questions. When trying to preserve public interest victories by keeping cases out of the Court, we focus not only on the merits of the case, but also on technical legal issues and the often-complex question of what makes a case "cert-worthy."

3.    After Choctaw County filed a petition for a writ of certiorari, *Choctaw County v. Jauch,* No. 18-7 (petition filed June 27, 2018), I discussed the matter with Ms. Jauch's counsel, Victor I. Fleitas. Mr. Fleitas informed me that he intended to waive response, but we agreed to discuss the matter further if the Supreme Court requested response. On September 17, 2018, the Supreme Court called for a response. Mr. Fleitas and I agreed to jointly represent Ms. Jauch in connection with opposing certiorari, which presented issues regarding procedural due process and qualified immunity. I was responsible for drafting respondent's brief in opposition, in consultation with Mr. Fleitas. The brief in opposition was filed on October 17, 2018. A copy of the brief in opposition is attached to this declaration as Exhibit 1. On December 10, 2018, the Court denied certiorari.

4.    I have litigated complex cases in federal court for more than twenty-five years. In 1991, I graduated *cum laude* from American University Washington College of Law (AUWCL). From 1991 to 1995, I was a staff attorney with the Farm Worker Division of Texas Rural Legal Aid, Inc., where I litigated employment and civil rights cases in federal court on behalf of migrant, transnational, and contingent workers, including class and collective actions. From 1995 to 2004, I served as a senior trial attorney with the Civil Rights Division of the U.S. Department of Justice, where I litigated employment discrimination cases against state and local government employers and defended the constitutionality of federal affirmative action programs.

5.      I joined PCLG in February 2004.[1] My practice at PCLG consists of complex federal litigation with an emphasis on constitutional law, civil rights, class actions, administrative law, and open government, including practice before the Supreme Court. For example, I successfully represented the petitioner in *Jones v. Flowers*, 547 U.S. 220 (2006), from the petition for certiorari through oral argument and remand. In *Jones*, the Court held that due process requires the government to take further action to provide notice of an impending deprivation of property when the government learns that its initial effort has failed. I also drafted the petitioner's merits briefs in *Dolan v. U.S. Postal Service*, 546 U.S. 481 (2006) (holding that the postal exception to the Federal Tort Claims Act does not bar all claims for injuries caused by the negligence of government employees engaged in the delivery of mail), and the respondent's merits brief in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013) (holding that a plaintiff must demonstrate but-for causation to establish liability for retaliation under Title VII).

6.      I have drafted numerous successful briefs in opposition to petitions for certiorari. *See, e.g., DirecTV, LLC v. Hall*, 138 S. Ct. 635 (2018) (denying review of Fourth Circuit's decision finding joint employment under the Fair Labor Standards Act where two entities codetermine the key terms and conditions of a worker's job); *Antelope Valley Union High School District v. M.C.*, 138 S. Ct. 556 (2017) (denying review of Ninth Circuit's decision finding that a school district violated the procedural requirements of the Individuals with Disabilities Education Act (IDEA)); *Jefferson County Board of Education v. Phillip C.*, 134 S. Ct. 64 (2013) (denying review of Eleventh Circuit's decision finding that a school district violated the IDEA); *Limited Liability*

---

[1] In 2014, I left PCLG to accept a two-year appointment as a Visiting Professor at Georgetown Law School, where I was Director of the Civil Rights Clinic. In that capacity, I directed a full-time student clinic engaged in complex civil rights and other public interest litigation, and I taught litigation skills to student attorneys and graduate teaching fellows. I returned to PCLG in August 2016.

*Company v. Jane Doe*, 133 S. Ct. 2796 (2013) (denying review of Puerto Rico Supreme Court's decision applying general contract law principles to determine that the parties had not agreed to arbitrate claims arising from an employment relationship); *Solana Beach Sch. Dist. v. Ka. D.*, 133 S. Ct. 650 (2012) (denying review of Ninth Circuit's decision finding that a school district violated the IDEA); *Garden Grove Unified Sch. Dist. v. C.B.*, 132 S. Ct. 500 (2011) (denying review of Ninth Circuit's decision finding that a school district violated the IDEA); *Best Western Encina Lodge & Suites v. D'Lil*, 129 S. Ct. 2824 (2009) (denying review of Ninth Circuit's decision that plaintiff had standing to maintain an Americans with Disabilities Act claim); *Flipping v. Reilly*, 555 U.S. 1170 (2009) (denying review of Third Circuit's decision that a public employee's truthful trial testimony is citizen speech protected by the First Amendment); *Edwards v. Kenyon*, 552 U.S. 1038 (2007) (denying review of Eighth Circuit's decision affirming, by vote of an equally divided court, a district court order denying qualified immunity to a police officer in case alleging excessive force).

7.     Ms. Jauch seeks an award of attorney's fees for 38.4 hours of work I performed in connection with the preparation and filing of respondent's brief in opposition to certiorari. A description of the tasks performed each date and the amount of time I spent on each is attached to this declaration as Exhibit 2. The entries on Exhibit 2 were contemporaneously recorded in the timekeeping program used by PCLG. Considerable billing judgment was used in recording the hours reflected in Exhibit 2. For example, we are not seeking an award of attorney's fees for the time that my colleagues at PCLG spent proofreading and offering comments on drafts of the brief in opposition. Thus, the hours set forth in Exhibit 2 are less than all the hours actually spent by PCLG on this case.

4

8. To draft respondent's brief in opposition, I had to review the decisions of the district court and the court of appeals, the dissent from denial of rehearing en banc, the petition, and all the cases cited in the petition. I also had to identify and review the leading appellate decisions from each federal circuit addressing the questions presented. In addition to drafting the brief, I was responsible for ensuring that the brief complied with the Rules of the Supreme Court, making edits in response to co-counsel's comments, and arranging for printing and service of the brief. I recorded 38.4 hours in connection with preparing the brief in opposition.

9. The 38.4 hours of work I performed to prepare and file the brief in opposition to certiorari were necessary and reasonable. Because of my experience with Supreme Court practice in general, and in preparing briefs at the certiorari stage in particular, I was able to be exceptionally efficient in drafting the brief. Further, Mr. Fleitas and I were very careful not to duplicate effort, and his familiarity with the facts and proceedings contributed to the efficiency with which the brief was completed.

10. Ms. Jauch seeks attorney's fees at the rate of $572 an hour for my work, which is far below the market rate charged by attorneys of comparable skill, reputation, and experience in private Supreme Court practice, and less than the rate I have been awarded in other cases for similar work. The reasonableness of the hourly rate sought for my work is established by a matrix maintained by the U.S. Attorney's Office (USAO) in Washington, DC, to evaluate requests for attorney's fees in civil cases in District of Columbia courts. The USAO Matrix is attached to this declaration as Exhibit 3.

11. An hourly rate of $572 for my work in this case represents a substantial discount from the market rate for my work because attorneys engaged in Supreme Court practice routinely charge more per hour than lawyers with a general federal litigation practice, and the USAO Matrix

rates are based on general federal litigation. It was reasonable for Ms. Jauch to have retained the services of experienced Supreme Court advocates at PCLG, because we are knowledgeable in the special kinds of arguments needed to oppose a writ of certiorari in the Supreme Court, and our familiarity with Supreme Court procedures allows us to prepare a compliant brief in less time than would be required by attorneys who are not experienced in Supreme Court practice. Indeed, opposing certiorari entails a different approach than briefing the merits of a case, and certiorari-stage advocacy is very different from the day-to-day work of most lawyers. For this reason, a specialized Supreme Court bar has emerged in the past two decades, and clients often retain one of the specialized practitioners who has a track record of persuading the Court to grant or deny certiorari and who has experience in briefing and arguing cases before the Court. Thus, it was reasonable for Ms. Jauch to retain PCLG to oppose the petition.

12.     In summary, Ms. Jauch requests attorney's fees for my work in the total amount of $21,965 (38.4 hours @ $572 per hour).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 9, 2019.

> */s/ Michael T. Kirkpatrick*
> Michael T. Kirkpatrick
> Public Citizen Litigation Group
> 1600 20th Street NW
> Washington, DC 20009
> (202) 588-1000
> mkirkpatrick@citizen.org

Exhibit 1
to Kirkpatrick Declaration

No. 18-7

IN THE
# Supreme Court of the United States

―――――

CHOCTAW COUNTY AND CLOYD HALFORD,

*Petitioners,*

v.

JESSICA JAUCH,

*Respondent.*

―――――

On Petition for a Writ of Certiorari to the
United States Court of Appeals for the Fifth Circuit

―――――

## RESPONDENT'S BRIEF IN OPPOSITION

―――――

MICHAEL T. KIRKPATRICK
PUBLIC CITIZEN
  LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

VICTOR I. FLEITAS
  *Counsel of Record*
452 N. Spring Street
Tupelo, MS 38804
(662) 840-0270
fleitasv@bellsouth.net

*Attorneys for respondent*

October 2018

i

# QUESTIONS PRESENTED

Following her indictment by a grand jury, respondent Jessica Jauch was arrested and put in jail for ninety-six days before she was brought before a judge or had counsel appointed or bail set. Shortly after being brought to court, Ms. Jauch was released and the prosecutor dismissed the case. The questions presented are:

1. Whether a pretrial detainee held for an excessive period of time without access to the judicial system has been denied procedural due process in violation of the Fourteenth Amendment.

2. Whether the Fifth Circuit properly held a county and local sheriff liable for denying procedural due process to a pretrial detainee where their failure to act was not mandated by state law or court order.

3. Whether the Fifth Circuit properly denied qualified immunity on the ground that it is clearly established that holding a pretrial detainee for ninety-six days without access to the judicial system is unconstitutional.

ii

# TABLE OF CONTENTS

QUESTIONS PRESENTED ......................................... i

TABLE OF AUTHORITIES ...................................... iii

INTRODUCTION ...................................................... 1

STATEMENT............................................................ 2

    A.  Factual Background........................................ 2

    B.  District Court Proceedings ............................. 3

    C.  Proceedings on Appeal .................................... 5

REASONS FOR DENYING THE WRIT.................... 8

I. The Fifth Circuit's determination that excessive
pretrial detention without access to a court violates
the Fourteenth Amendment does not warrant re-
view. ............................................................................ 8

II. The Fifth Circuit's determination that Choctaw
County is liable under *Monell* does not warrant re-
view. .......................................................................... 11

III. The Fifth Circuit properly denied qualified im-
munity because the relevant law was clearly estab-
lished. ....................................................................... 15

CONCLUSION......................................................... 16

iii

## TABLE OF AUTHORITIES

**Cases**                                           **Pages**

*Armstrong v. Squadrito*,
  152 F.3d 564 ........................................................ 8

*Baker v. McCollan*,
  443 U.S. 137 (1979) ..................................... 4, 9, 10

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ............................................. 9

*Bockes v. Fields*,
  999 F.2d 788 (4th 1993)...................................... 13

*Conroy v. City of Philadelphia*,
  421 F. Supp. 2d 879 (7th Cir. 1991).................... 13

*Cooper v. Dillon*,
  403 F.3d 1208 ..................................................... 13

*Davis v. Camden*,
  657 F. Supp. 396 (D.N.J. 1987) ........................... 13

*District of Columbia v. Wesby*,
  583 U.S. __, 138 S. Ct. 577 ................................. 16

*Evers v. Custer County*,
  745 F.2d 1196 (9th Cir. 1984) ............................. 13

*Garner v Memphis Police Department*,
  8 F.3d 358 (6th Cir. 1993) .................................. 13

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ............................................. 9

*Hayes v. Faulkner County, Arkansas*,
  388 F.3d 669 (8th Cir. 2004) ................................ 8

*Hewitt v. Helms*,
  459 U.S. 460 (1983) ............................................. 4

iv

*Jones v. City of Jackson*,
　203 F.3d 875 (5th Cir. 2000) ...................... 2, 6, 15

*Kaley v. United States*,
　571 U.S. 320 (2014) .............................................. 9

*Manuel v. City of Joliet*,
　137 S. Ct. 911 (2017) ............................................ 9

*Mathews v. Eldridge*,
　424 U.S. 319 (1976) .............................................. 6

*Medina v. California*,
　505 U.S. 437 (1992) .............................................. 6

*Monell v. New York City Department of Social Services*,
　436 U.S. 658 (1978) ......................................... 1, 5

*Moya v. Garcia*,
　887 F.3d 1161 (10th Cir. 2018) ......... 10, 11, 14, 15

*N.N. ex rel. S.S. v. Madison Metropolitan School District*,
　670 F. Supp. 2d 927 (W.D. Wisc. 2009) .............. 13

*Pembaur v. City of Cincinnati*,
　475 U.S. 469 (1986) ............................................ 14

*Sheffield v. Reece*,
　28 So. 2d 745 (Miss. 1947).................................. 12

*Snyder v. King*,
　745 F.3d 242 (7th Cir. 2014) .............................. 13

*Surplus Store & Exchange, Inc. v. City of Delphi*,
　928 F.2d 788 (7th Cir. 1991) ............................... 13

*Vives v. City of New York*,
　524 F.3d 346 (2d Cir. 2008).................................. 13

*Walker v. City of Calhoun, Georgia*,
　901 F.3d 1245 (11th Cir. 2018) ........................... 13

v

*Whitesel v. Sengenberger*,
   222 F.3d 861 (10th Cir. 2000) .............................. 13

## Other Authorities

U.S. Const. art. VI, cl. 2 ............................................ 12

Miss. Code Ann. § 9-7-3 ........................................... 12

## INTRODUCTION

Petitioners seek review of a decision of the Fifth Circuit holding that ninety-six days of pretrial detention without access to a judge, appointed counsel, or bail violates the Due Process Clause of the Fourteenth Amendment. The Court should decline to review this case because petitioners have failed to show any compelling reason to grant the writ. Indeed, the petition is based on a series of mistaken assumptions about the nature of this case.

First, the decision below does not conflict with the decisions of this Court or any court of appeals on the issue whether prolonged pretrial detention without access to the justice system violates a liberty interest arising from the Due Process Clause. Petitioners fail to address squarely the first question they ask the Court to consider, and instead focus on issues of probable cause, the Fourth Amendment, and state law procedures—none of which are the basis for Ms. Jauch's claim.

Second, with respect to *Monell* liability, petitioners mistakenly assert that the policy at issue was a product of mandatory state law and a court-issued capias, rather than a County policy promulgated by the Sheriff. Thus, petitioners claim, the County's policy was not the cause of Ms. Jauch's unconstitutional detention. Contrary to petitioners' framing, however, Choctaw County's policy was to hold pretrial detainees for a prolonged period without access to a court or the benefit of basic constitutional protections, and no state law or court order required the County to implement such a policy. Properly understood, the County's *Monell* liability is, as the Fifth Circuit stated, "obvious." Pet. App. 20.

2

Finally, the Fifth Circuit's denial of qualified immunity was based on longstanding Fifth Circuit precedent establishing that prolonged detention without being brought before a judge violates a pretrial detainee's Fourteenth Amendment due process rights. *See Jones v. City of Jackson*, 203 F.3d 875, 880–81 (5th Cir. 2000). Fifth Circuit case law leaves no question that the right at issue here was clearly established years before petitioners detained Ms. Jauch.

For each of these reasons, the petition should be denied.

## STATEMENT

### A. Factual Background

The Choctaw County Circuit Court holds two three-week terms each year in February and August. Pet. App. 48.

On January 24, 2012, a grand jury indicted Jessica Jauch on a drug charge based on the word of a confidential informant. The same day, the Choctaw County Circuit Clerk issued a capias directing the Sheriff to arrest Ms. Jauch and bring her before the Circuit Court on January 31, 2012, which was the docket call for the February term of court. *Id*. 2, 49. The Sheriff, however, failed to serve the capias or arrest Ms. Jauch before the February 2012 term ended.

On April 26, 2012, Ms. Jauch was stopped for traffic violations by the Starkville Police Department. During the stop, the officers discovered Ms. Jauch had an outstanding misdemeanor warrant in Choctaw County. The officers briefly detained Ms. Jauch until Choctaw County deputies arrived. The deputies took her into custody and transported her to

3

the Choctaw County jail. The next morning, Ms. Jauch was served with the misdemeanor warrant and the capias. Ms. Jauch cleared the misdemeanor warrant within a few days, but she remained in the Choctaw County jail pursuant to the capias. *Id.* 2.

Ms. Jauch repeatedly asserted her innocence and asked to be brought to court to arrange bail, but the Sheriff refused to bring her before a judge. According to the Sheriff, Ms. Jauch was required to stay in jail without access to a court or appointed counsel until the next term of court—in August 2012. *Id.* 2–3.

Ms. Jauch's case was set for docket call on July 31, 2012, the eve of the August term. On July 31, after she had spent ninety-six days in jail, Ms. Jauch was taken to court, where counsel was appointed, bail set, and trial scheduled. On August 6, 2012, Ms. Jauch posted bond and was released from the Choctaw County jail. *Id.* 3.

Before the end of August, the prosecutor reviewed the evidence against Ms. Jauch, concluded that it was deficient, and moved to dismiss the case. The Circuit Court dismissed the charge. "It is undisputed that Jauch was innocent all along, as she had claimed from behind bars." *Id.*

### B. District Court Proceedings

Ms. Jauch filed suit under 42 U.S.C. § 1983 against petitioners Choctaw County and Sheriff Halford alleging that her prolonged pretrial detention without access to the justice system and without any ability to seek pretrial release violated her constitutional rights, including her right to procedural

4

due process under the Fourteenth Amendment.[1] Petitioners moved for summary judgment, and Ms. Jauch filed a cross motion for partial summary judgment on liability.

The district court acknowledged that a liberty interest protected by the Fourteenth Amendment may arise from either the Due Process Clause itself or from state law, Pet. App. 31 (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)), and that an individual's liberty interest in avoiding pretrial detention can be abridged only if the deprivation comports with the requirements of due process, *id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). The district court did not, however, address Ms. Jauch's liberty interest arising from the Due Process Clause itself, but instead focused entirely on whether state law created a constitutionally protected liberty interest. The district court concluded that Mississippi law does not entitle a defendant indicted by a grand jury to an initial appearance or preliminary hearing to reexamine the grand jury's determination that there is probable cause for an arrest and pretrial detention. *Id.* 32. On this basis alone, the district court found that Ms. Jauch had "failed to allege a constitutional violation of her procedural due process rights." *Id.* 33.

---

[1] Ms. Jauch also brought claims under the Sixth and Eighth Amendments. The Fifth Circuit did not separately address those challenges, which relate to delays in the provision of counsel and bail, concluding that they are directly attributable to the prolonged detention that the court found unconstitutional under the Fourteenth Amendment. Pet. App. 18 n.9.

5

The district court further held that Ms. Jauch's Fourteenth Amendment claim had to be analyzed under the "more particularized" Fourth Amendment requirement that the states "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Id.* 34. Ms. Jauch had not, however, alleged that she was detained without probable cause in violation of the Fourth Amendment. Rather, Ms. Jauch alleged that the duration of her pretrial detention without access to the judicial system violated her due process rights under the Fourteenth Amendment. Apart from its discussion of probable cause, the district court never addressed Ms. Jauch's due process claim.

Having found no constitutional violation, the district court held that "in the event that any of Plaintiff's claims survive" following appeal, Sheriff Halford would be entitled to qualified immunity. The district court opined that, for the same reason it found that there was no violation of a constitutional right, the Sheriff's conduct could not have been "objectively unreasonable under the law at the time of the incident." *Id.* 40. And for the same reason again, the court found that Ms. Jauch had not established a claim against Choctaw County under § 1983 and *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91 (1978). Pet. App. 41–42.

### C. Proceedings on Appeal

A unanimous panel of the Fifth Circuit reversed, holding that a "pre-trial detainee denied access to the judicial system for a prolonged period has been denied basic procedural due process" in violation of the Fourteenth Amendment. Pet. App. 1.

6

The court of appeals explained that the district court erred by treating Ms. Jauch's Fourteenth Amendment claims "as an attack on the original probable cause determination underlying her arrest" and by applying the Fourth Amendment when Ms. Jauch had "never alleged a Fourth Amendment violation nor sought to challenge the probable cause determination made by the grand jury." *Id.* 3–4. The court explained that the district court's decision, if affirmed, would mean that "the Constitution is not violated by prolonged pretrial detention so long as the arrest is supported by probable cause." *Id.* 5.

The court then analyzed Ms. Jauch's Fourteenth Amendment procedural due process claim and held that *Jones v. City of Jackson* controlled. Pet. App. 7–8. In *Jones*, the court held that an individual held on a bench warrant for an extended period without a court appearance had suffered a violation of his right to due process that "lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause." 203 F.3d at 880.

Having identified a protected liberty interest, the court of appeals found that regardless of which procedural due process test applies, *see* Pet. App. 9–11 (discussing the tests articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and *Medina v. California*, 505 U.S. 437, 443 (1992)), "the indefinite detention procedure" at issue "violated Jauch's right to procedural due process." *Id.* 12. First, the court concluded that "indefinite pre-trial detention without an arraignment or other court appearance offends fundamental principles of justice deeply rooted in the traditions and conscience of our people." *Id.* Thus, "defendants' indefinite detention procedure … fails *Medina*'s historical test." *Id.* 17. Second, the court

7

held that prolonged pretrial detention "without access to the justice system is patently unfair in a society where guilt is not presumed." *Id.* 18. Moreover, the court explained that "the challenged procedure denies criminal defendants their *enumerated* constitutional rights relating to criminal procedure by cutting them off from the judicial officers charged with implementing constitutional criminal procedure," which is "unjust and unfair." *Id.*

The Fifth Circuit then held Choctaw County liable under *Monell* because there is no dispute that prolonged pretrial detention without access to courts or basic constitutional rights is the policy in Choctaw County and that Sheriff Halford is the relevant policymaker, and because it is "obvious that the indefinite detention procedure caused the due process violation Jauch complains of—indefinite detention." *Id.* 20. Finally, the court held that Sheriff Halford is not entitled to qualified immunity because "the indefinite detention procedure violated Jauch's Fourteenth Amendment right to due process," *id.* 21, and the right at issue had been clearly established at least since the Fifth Circuit's 2000 decision in *Jones. Id.*

Petitioners sought rehearing en banc, which was denied. Judge Southwick wrote a dissent acknowledging that "*Jones* is the law of this circuit," Pet. App. 57, and agreeing with the panel's conclusion that "it was 'clearly established' that 'the Constitution forbids confining criminal defendants for a prolonged period' before bringing them before a judge." *Id.* 60 (quoting panel decision, Pet. App. 21). Nevertheless, Judge Southwick suggested that, for purposes of qualified immunity, it was not clear "how prolonged detention must be to constitute a violation of rights." *Id.*

8

## REASONS FOR DENYING THE WRIT

### I. The Fifth Circuit's determination that excessive pretrial detention without access to a court violates the Fourteenth Amendment does not warrant review.

As to the first question presented, the Fifth Circuit, applying its decision in *Jones*, held that pretrial detention for 96 days without access to the judicial system violates the Due Process Clause of the Fourteenth Amendment, even where the detainee was arrested pursuant to a valid warrant. The other circuits that have addressed the issue agree. *See, e.g., Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 672 (8th Cir. 2004) (finding that 38-day pre-appearance detention after arrest by valid warrant violated plaintiff's right to due process); *Armstrong v. Squadrito,* 152 F.3d 564, 576 (7th Cir. 1998) (holding that the Due Process Clause prohibits a 57-day detention without an appearance following arrest by valid warrant). Given the absence of a circuit split, this Court should deny review.

Petitioners' focus on probable cause, the Fourth Amendment, and state criminal procedure rules is misplaced: This case does not present those issues. Ms. Jauch did not allege that she was detained without probable cause in violation of the Fourth Amendment, and she did not claim that state law procedures created her constitutionally protected liberty interest. Rather, Ms. Jauch's claim arises directly from the Fourteenth Amendment's protection against deprivations of liberty without due process.

Petitioners claim that five decisions of this Court support granting review on their first question, Pet. 10–13, but only one—*Baker v. McCollan*—is even ar-

guably relevant. The other four decisions they cite do not even mention the issue whether a pretrial detainee held for an excessive period of time without access to the judicial system has been denied due process in violation of the Fourteenth Amendment. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."); *Bell v. Wolfish*, 441 U.S. 520 (1979) (holding that conditions of pretrial confinement did not amount to punishment in violation of the Due Process Clause of the Fifth Amendment, but not addressing duration of detention or access to court); *Kaley v. United States*, 571 U.S. 320, 322 (2014) (holding that when challenging the legality of a pretrial asset seizure, a criminal defendant who has been indicted is not constitutionally entitled to contest the grand jury's probable cause determination); *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017) (holding that pretrial detention can violate the Fourth Amendment after the start of legal process where probable cause determination was based on false evidence), *cited in* Pet. 10–13.

In *Baker*, this Court held that a three-day detention over a holiday weekend pursuant to a warrant conforming to the requirements of the Fourth Amendment was not so excessive as to violate the Constitution. 443 U.S. at 144. The Court noted, however, that a pretrial detainee "could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment," *id.*, and the Court suggested that such detention "will after the lapse of a certain amount of time deprive the accused of 'liberty …

10

without due process of law.'" *Id.* at 145 (quoting the Fourteenth Amendment). The decision below does not conflict with *Baker*. Rather, as foreshadowed in *Baker*, the Fifth Circuit found that pretrial detention for 96 days without access to the justice system is of such duration that it deprived Ms. Jauch of her liberty without due process.

Petitioners' final argument for review of the first question presented rests on a fundamental misunderstanding of the decision below. The Fifth Circuit did not find that "state law created a protected procedural liberty interest in an arraignment or other pretrial court proceeding protected by the Fourteenth Amendment even after [Ms. Jauch] had been indicted by a grand jury," Pet. 15, as repeatedly asserted by petitioners. To the contrary, the Fifth Circuit recognized that Mississippi lacks state-law procedures that would have afforded Ms. Jauch access to the judicial system between the time of her arrest and the next term of court, but found that the duration of her detention without such access violated a liberty interest arising from the Due Process Clause itself. As such, petitioners' lengthy discussion of why Ms. Jauch could not avail herself of various state criminal procedure rules is inapposite. *See* Pet. 15–20.

For the same reason, petitioners' reliance on *Moya v. Garcia*, 887 F.3d 1161 (10th Cir. 2018), is misplaced. *Moya* held that the plaintiffs, who had been detained in a county jail for 30 days or more prior to arraignment even though state law requires arraignment within 15 days of arrest, *id.* at 1231, alleged a deprivation of due process based on the violation of their right to timely arraignment as provided by state law, rather than a violation of their right to freedom from prolonged pretrial detention based on

11

the Due Process Clause itself, *id.* at 1237. The court did not decide whether the plaintiffs "would have stated a valid claim if they had alleged a broader right to freedom from pretrial detention" unrelated to the fifteen-day requirement of state law.[2] *Id.* at 1238 n.11. Thus, *Moya* poses no conflict with the decision below.

## II. The Fifth Circuit's determination that Choctaw County is liable under *Monell* does not warrant review.

The Fifth Circuit found that Choctaw County has a policy of holding defendants arrested pursuant to a capias without access to courts, appointed counsel, or a bail determination until the next term of court, no matter how long the resulting period of detention. That policy, the court held, caused the violation of Ms. Jauch's constitutional rights, and, thus, Choctaw County is liable under *Monell*. Pet. App. 19–21.

Petitioners make two arguments in support of their request for review of the Fifth Circuit's decision on *Monell* liability. First, they assert that the decision conflicts with decisions of other circuits holding that local governments cannot be liable under § 1983 for actions mandated by state law. Pet. 21–25. Second, they assert that the Sheriff was not the relevant

---

[2] The dissent in *Moya* noted that plaintiffs would have stated a valid claim if they had alleged a right to freedom from prolonged pretrial detention: "There is no serious question that Plaintiffs have a protected liberty interest arising from the Due Process Clause itself." 887 F.3d at 1241 n.3 (McHugh, J., dissenting). He explained, "however, Plaintiffs assert that the protected liberty interest grounding their procedural due process claims arises not from the Due Process Clause itself, but rather from New Mexico law." *Id.* at 1241.

12

policymaker because he merely followed the instructions in the court-issued capias to hold Ms. Jauch until the next term of court. *Id.* 27–32. Both arguments miss the mark because they assume that the County could not have adopted a policy that would simultaneously protect the right of pretrial detainees to timely access to the justice system and comply with state law requirements.

In fact, the County could have taken any number of actions to avoid the deprivation of Ms. Jauch's constitutional rights, none of which are prohibited by state law. For example, the Sheriff could have contacted the circuit court judge or the prosecutor and requested that Ms. Jauch be brought before the judge without excessive delay, or have bail set. Indeed, state law specifically provides that a circuit court judge may hold a special term of court to handle such business. *See* Miss. Code Ann. § 9-7-3. The Sheriff could also have alerted the public defender to Ms. Jauch's situation so that office could seek relief on her behalf by filing a simple motion to expedite her appearance before the court. Instead, the Sheriff instituted a policy of doing nothing between terms of court, even though he knew that Ms. Jauch was enduring a prolonged period of pretrial detention without access to the justice system. In any event, even if the Sheriff could not simultaneously comply with the Constitution and state-law requirements, the Supremacy Clause makes the correct choice clear. *See* U.S. Const. art. VI, cl. 2. Indeed, the state supreme court has long advised that "[i]t would be better that" a pretrial detainee "be released without bail, than that he should be detained in jail in violation of the Constitution." *Sheffield v. Reece*, 28 So. 2d 745, 748 (Miss. 1947).

13

Petitioners claim that a circuit split exists on the issue whether municipalities can be liable for merely enforcing clear and mandatory state laws because some circuits have held that actions that involve no choice are not a matter of municipal policy.[3] Those cases are inapposite, however, because, as explained above, no state law required that the Sheriff do nothing between terms of court to provide pretrial detainees with timely access to the justice system. Rather, the Sheriff, who is the chief executive of the County

_____

[3] To illustrate the purported split, petitioners cite a series of cases, all dating back a decade or more. Pet. 22–24 (comparing *Vives v. City of N.Y.*, 524 F.3d 346 (2d Cir. 2008); *Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000); *Garner v Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993); *Bockes v. Fields*, 999 F.2d 788 (4th 1993); *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) with *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005); *Evers v. Custer Cty.*, 745 F.2d 1196 (9th Cir. 1984); *Conroy v. City of Phila.*, 421 F. Supp. 2d 879 (E.D. Pa. 2006); *Davis v. Camden*, 657 F. Supp. 396, 402 (D.N.J. 1987)). But the question is more nuanced and the circuits less clearly divided than petitioners claim. *Compare Snyder v. King*, 745 F.3d 242, 249 (7th Cir. 2014) (explaining that when "state law unequivocally instructs a municipal entity to produce binary outcome X if condition Y occurs, we cannot say that the municipal entity's 'decision' to follow that directive involves the exercise of any meaningful independent discretion, let alone final policymaking authority") *with Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1256 (11th Cir. 2018) (reasoning that the city was not immune from § 1983 liability because "the statute's permissive grant of authority to courts to establish bail schedules" could not be read to "implicitly preempt[] all municipal regulation of bail"); *see also N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 934–35 (W.D. Wisc. 2009) (discussing the same group of cases identified in the petition and describing their positions as "variations" on "the meaning of concepts such as 'policy,' 'deliberate choice,' 'direct causal link' and 'moving force,'" rather than a clear conflict among the courts of appeal).

14

with respect to detention operations, chose to adopt a policy of doing nothing, and that choice caused a deprivation of constitutional rights. Because the Sheriff's policy is not the mere enforcement of a state law requirement, the issue on which petitioners assert a circuit split is not presented in this case.

Petitioners' request that this Court grant review to determine whether the Sheriff was the relevant policymaker suffers from the same infirmity. Petitioners argue that responsibility for Ms. Jauch's unconstitutional detention "rests with the state circuit court judge," Pet. 27, and not with the County through its policymaker the Sheriff, because the capias was issued by the court. The Fifth Circuit did not, however, take issue with the Sheriff's decision to execute the capias process. Rather, it found that he adopted a policy of doing nothing to bring a detainee before a judge until the next term of court even when it is months away. That policy is not mandated by state law or the capias itself. Thus, petitioners' assertion that the decision below conflicts with *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (requiring that the decisionmaker have authority to establish policy "with respect to the subject matter in question"), is incorrect.

Similarly misplaced is petitioners' assertion of a conflict with the Tenth Circuit's decision in *Moya*. The plaintiffs in *Moya* challenged the denial of their right to a timely arraignment under New Mexico law. The Tenth Circuit reasoned that the court, and not the sheriff and wardens of the jail, caused the arraignment delays. 895 F.3d at 1233–34; *see id.* at 1237 ("We have focused on the plaintiffs' right to timely arraignment because that's what the plaintiffs have alleged."); *id.* at 1246 (McHugh, J., dissenting)

("By focusing on the arraignment rather than the detention, the majority naturally finds that the causal force lies with the state court's conduct, rather than with the jailers' conduct."). In contrast, Ms. Jauch challenged her prolonged pretrial detention without access to the justice system under the Due Process Clause itself.

## III. The Fifth Circuit properly denied qualified immunity because the relevant law was clearly established.

Petitioners argue that this Court should review the denial of qualified immunity because the Fifth Circuit's decision in *Jones v. City of Jackson* is not sufficiently similar to this case to put Sheriff Halford on notice that his failure to act violated the Constitution. Pet. 36. In *Jones*, the Fifth Circuit found that it was clearly established in 1994–1995 that prolonged detention without being brought before a judge violates a pretrial detainee's Fourteenth Amendment due process rights. 203 F.3d at 880–81. Petitioners assert that *Jones* is meaningfully distinguishable because there, the plaintiff was held on a bench warrant, whereas Ms. Jauch was held on a capias. They also note that the court in *Jones* did not specify whether the due process violation was substantive or procedural. These differences are immaterial to whether Fifth Circuit law was clearly established. The important fact is that controlling authority in the Fifth Circuit put Sheriff Halford on notice that it violates the Fourteenth Amendment to hold a person in jail for an extended period of time without access to a court. Indeed, the Fifth Circuit held in *Jones* that, as early as 1994 or 1995, no reasonable law enforcement officer would have believed otherwise. *Id.* Thus, the court below properly applied the

16

longstanding qualified immunity standard, reinforced by this Court's recent decision in *District of Columbia v. Wesby*, 583 U.S. __, 138 S. Ct. 577 (2018). There is no reason for this Court to take a second look.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be denied.

Respectfully submitted,

| | |
|---|---|
| MICHAEL T. KIRKPATRICK | VICTOR I. FLEITAS |
| PUBLIC CITIZEN | *Counsel of Record* |
|   LITIGATION GROUP | 452 N. Spring Street |
| 1600 20th Street NW | Tupelo, MS 38804 |
| Washington, DC 20009 | (662) 840-0270 |
| (202) 588-1000 | fleitasv@bellsouth.net |

Attorneys for respondent

October 2018

Exhibit 2
to Kirkpatrick Declaration

**PUBLIC CITIZEN LITIGATION GROUP**
1600 20th Street NW • Washington DC 20009
202/588-1000 • www.citizen.org

## Time Records Report

| Staff | Date | Time | Description |
|---|---|---|---|

### Choctaw County v. Jauch, No. 18-7

**Kirkpatrick, Michael**

| Staff | Date | Time | Description |
|---|---|---|---|
| | 10/1/2018 | 2.5 | Read district court decision, 5th Cir. panel decision, and dissent from rehearing en banc, make margin notes. |
| | 10/2/2018 | 2.8 | Read petition and make margin notes, begin downloading a reading key cases cited in petition. |
| | 10/3/2018 | 5.7 | Begin drafting cert opp. Draft background section and add citations to the petition appendix. |
| | 10/5/2018 | 6.2 | Continue downloading and reading key cases and outline argument section of the brief in opp. |
| | 10/6/2018 | 5.8 | Continue research for Section I of argument. Download and read cases. Draft Section I. |
| | 10/7/2018 | 6.1 | Continue legal research and draft Sections II and III. |
| | 10/8/2018 | 1.8 | Continue research and refining of draft cert opp. |
| | 10/9/2018 | 2.2 | Continue research and edits to draft cert opp |
| | 10/10/2018 | 3.1 | Make final edits to draft cert opp, including edits suggested by A. Zieve. Prepare and check Table of Authorities and Table of Contents. Send draft cert opp to V. Fleitas and exchange emails re: same. |
| | 10/15/2018 | 1.9 | Make edits to brief based on comments of V. Fleitas and further research, have brief proofread, send final version to V. Fleitas for final review. |
| | 10/16/2018 | 0.3 | Make final changes to brief based on suggestions from V. Fleitas, check tables for page changes, send final version to printer with instructions and word count certificate. |
| | **Staff total:** | **38.4** | |
| | **Case total:** | **38.4** | |
| | **Grand total** | **38.4** | |

Exhibit 3
to Kirkpatrick Declaration

# USAO ATTORNEY'S FEES MATRIX — 2015-2019

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 | 2016-17 | 2017-18 | 2018-19 |
|---|---|---|---|---|
| 31+ years | 568 | 581 | 602 | 613 |
| 21-30 years | 530 | 543 | 563 | 572 |
| 16-20 years | 504 | 516 | 536 | 544 |
| 11-15 years | 455 | 465 | 483 | 491 |
| 8-10 years | 386 | 395 | 410 | 417 |
| 6-7 years | 332 | 339 | 352 | 358 |
| 4-5 years | 325 | 332 | 346 | 351 |
| 2-3 years | 315 | 322 | 334 | 340 |
| Less than 2 years | 284 | 291 | 302 | 307 |
| Paralegals & Law Clerks | 154 | 157 | 164 | 166 |

*Explanatory Notes*

1.    This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases.  The matrix does **not** apply to cases in which the hourly rate is limited by statute.  *See* 28 U.S.C. § 2412(d).

2.    A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010).  Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index.  The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics.  The PPI-OL index is available at http://www.bls.gov/ppi.  On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multi-screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers" and "product code" 541110541110 for "Offices of Lawyers."  The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of  the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3.    The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-

Legal Services index measures. Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*, 793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should minimize disputes about whether the inflator is sufficient.

4. The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area. Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, *see* note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website. That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area. *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using prior methodology are reasonable).

5. Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount. Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6. The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school. Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school). *See Laffey*, 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same). The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data. Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level. The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7. ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks. Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index. The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8. The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia

have relied on the USAO's *Laffey* Matrix, rather than the so-called "*Salazar* Matrix" (also known as the "LSI Matrix" or the "Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction.  *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016); *Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc*., 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007).  *But see, e.g.*, *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000).  Since initial publication of the instant USAO Matrix in 2015, numerous courts similarly have employed the USAO Matrix rather than the *Salazar* Matrix for fees incurred since 2015.  *E.g.*, *Electronic Privacy Information Center v. United States Drug Enforcement Agency*, 266 F. Supp. 3d 162, 171 (D.D.C. 2017) ("After examining the case law and the supporting evidence offered by both parties, the Court is persuaded that the updated USAO matrix, which covers billing rates from 2015 to 2017, is the most suitable choice here.") (requiring re-calculation of fees that applicant had computed according to *Salazar* Matrix); *Clemente v. FBI*, No. 08-1252 (BJR) (D.D.C. Mar. 24, 2017), 2017 WL 3669617, at *5 (applying USAO Matrix, as it is "based on much more current data than the *Salazar* Matrix"); *Gatore v. United States Dep't of Homeland Security*, 286 F. Supp. 3d 25, 37 (D.D.C. 2017) (although plaintiff had submitted a "'great deal of evidence regarding [the] prevailing market rates for complex federal litigation' to demonstrate that its requested [*Salazar*] rates are entitled to a presumption of reasonableness, . . . the Court nonetheless concludes that the defendant has rebutted that presumption and shown that the current USAO Matrix is the more accurate matrix for estimating the prevailing rates for complex federal litigation in this District"); *DL v. District of Columbia*, 267 F. Supp. 3d 55, 70 (D.D.C. 2017) ("the USAO Matrix ha[s] more indicia of reliability and more accurately represents prevailing market rates" than the *Salazar* Matrix).  The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based.  The United States recently submitted an appellate brief that further explains the reliability of the USAO Matrix vis-à-vis the *Salazar* matrix.  *See* Br. for the United States as *Amicus Curiae* Supporting Appellees, *DL v. District of Columbia*, No. 18-7004 (D.C. Cir. filed July 20, 2018).